[Civ. No. 14795. Second Dist., Div. One. Aug. 30, 1945.]

NORTH SIDE PROPERTY OWNERS' ASSOCIATION (a Nonprofit Corporation) et al., Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents; HILLSIDE MEMORIAL PARK et al., Real Parties in Interest and Respondents.

600

Vernon P. Spencer, Howard P. Hall and Burr & Smith for Appellants.

J. H. O'Connor, County Counsel, Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Defendants and Respondents.

O'Melveny & Myers and Jackson W. Chance for Real Parties in Interest and Respondents.

WHITE, J.—A writ was issued in the trial court for the purpose of reviewing the proceedings and order of the Board of Supervisors of Los Angeles County, hereinafter referred to as "the Board," granting and issuing a permit to respondent Hillside Memorial Park, a corporation, on the 27th day of July, 1943, to establish, maintain and operate a private cemetery. After a hearing on the matter, a judgment was entered affirming the action of the board in granting the aforesaid permit. The petitioners named in the petition for the writ of review have appealed from such judgment.

The main attack upon the judgment is founded upon the contention that the trial court erred in not holding that the county regional planning commission, hereinafter referred to as "the commission," and the board acted without jurisdiction, when the former recommended to the latter that the permit applied for be granted, and when the board made its order granting the permit, in that:

(a) The notices of the hearing before the planning commission were not given as required by the law and were so given as to be misleading and to defeat their purpose;

(b) The information and material required by law were not made a part of the application for permit or in any way brought before the planning commission or board of supervisors; and

(c) There was no evidence to support several findings of the trial court, which will be hereinafter referred to.

The Cemetery Ordinance is No. 2854 (New Series) of the county of Los Angeles, as amended by Ordinance No. 2919 (New Series), hereinafter referred to as "the ordinance," and which was enacted pursuant to section 10 of the Planning Act of 1929 [Stats. 1929, p. 1805, as amended], Deering's General Laws, Act 5211b, which authorizes the board to refer certain matters to the regional planning commission before action is taken thereon by such board.

The main question to be here decided is whether the form of notices given pursuant to the ordinance was so inadequate and misleading that the board never acquired jurisdiction to grant the challenged permit. In this connection, the ordinance provides that, when an application to establish or maintain a cemetery is filed with the chief engineer of the commission, it shall by him be referred to the commission, which shall fix the time and place for public hearing to be held not less than 30 days nor more than 60 days from the date when such application is filed; that said engineer shall cause a copy of the notice of hearing on such application to be published in a newspaper of general circulation, and that said engineer shall also cause notices of said hearing to be conspicuously posted at the exterior boundary line of the proposed cemetery, not more than 300 feet apart, and at each change of direction of said boundary line, and also in the same manner along both sides of all public streets within one and one-half miles of the exterior boundaries of the proposed cemetery, in such manner as would "reasonably give notice to passers-by of the matters contained in said notice." It is also provided that where there are 50 or more buildings, used either for residential or business purposes, within a distance of one and one-half miles from the exterior boundaries of said proposed cemetery, said engineer shall cause a postcard notice of said hearing to be mailed to all property owners within said distance at least 15 days prior to said hearing, using for this purpose the last known name and address of such owners, as shown upon the records of the assessor of Los Angeles County.

The trial court found that the required notices were duly posted; published and mailed in compliance with the ordinance. Appellants contend there was no evidence to support such finding. This claim is without merit. There was

before the trial court a record of proceedings had before the commission, from which it appeared that Tyler Suess, Land Use Engineer of the commission, made a written report, wherein he specifically set forth the notices given, the manner in which the same were posted, and the postcard notices mailed. The report also contained a statement of the news-paper notices given, the manner of publication, the newspaper in which publication was had, as well as the number of pub-lications and the dates between which such publication was made. The affidavits referred to in the report of the land use engineer were presented to the commission and were also received in evidence by the court. The affidavit of posting notices states that the affiant conspicuously posted the notice of hearing "on both sides of all streets within a one and one-half mile radius, and at all intersections, and at 300 foot intervals around the border of the proposed cemetery." At-tached to the affidavit was an exact copy of the notice. The affidavits of publication in the newspaper, as well as the affidavit of mailing postcard notices, shows equally exact compliance with the ordinance. The findings of the trial court that due and proper notice of public hearing was given therefore was supported by competent evidence. Contrary to appellants' contention there is no inconsistency in the affi-davits of publication with reference to dates thereof, because one affidavit has reference to publication in a daily newspaper, while the other refers to publication in a weekly newspaper; both, however, in exact compliance with section 3 of the or-dinance.

Appellants challenge the legality of the notice given because it was therein stated that at the public hearing *"prop-erty owners* who wish to present testimony pertinent to the proposed establishment of said cemetery will be heard" (emphasis added). Appellants complain that the notice was given only to property owners and that this contravenes the statute, because the proceedings in connection with the estab-lishment of a cemetery concerns the general public, and that the restriction of the form of the notice to property owners defeats the main purpose of the notice. However, all that is required by the ordinance is that the commission fix a time and place for a "public hearing" and that the chief engineer shall cause notices "of hearing" and "of said hearing" to be published, posted and mailed. With these requirements

there was compliance in the instant case because the given notices did advise the public or, as stated in the ordinance, "the passers-by" that a "public hearing" would be held. Appellants do not suggest who, other than "property owners" situated in the mile and a half radius of the proposed cemetery site, would be interested in the hearing, nor is it suggested that any persons other than property owners desired or asked to be heard. What property rights, or other legal rights of a nonowner could be impaired is not called to our attention by appellants; and such being the case, notice to such nonowner is not required as a prerequisite to due process of law. The policy of the law with reference to ordinances, such as the one with which we are here concerned, is to assure that the matter of establishing a cemetery in a community shall be fully and fairly considered, and is not inimical to the public interests. This design was accomplished when due notice was given of a "public hearing" and when, as here, such a hearing was had, not only before the commission, but later before the board. When, as reflected by the record herein, no one was misled by the notices as to the manner and type of hearing that would be held and the date thereof, it follows that the requirements of the ordinance were complied with. Manifestly, appellants were not misled or deceived by the notices, because both appeared and were heard not only before the commission, but as well before the board. And the petition for a writ herein alleges that appellant North Side Property Owners' Association is "a non-profit corporation existing under the laws of the State of California and that its members are residents and property owners" in the section closest to the property to be utilized for a cemetery site. ■ Furthermore, neither appellant herein claims it was misled or prejudiced in any way by the form of the notices or the manner in which the same were published and posted. Having appeared, together with some 60 other people and corporate bodies, at the hearing in opposition to the application for a cemetery permit, it seems questionable that appellants should now be in a position to claim that they did not receive legal notice or that the notice which prompted their appearance at the public hearing was legally faulty.

■ The board, in the instant case, acquired jurisdiction to act upon the application for a cemetery permit when the notice required by the ordinance was given. The requirements of the ordinance were met, insofar as the hearing on the appli-

cation was concerned, when the commission, in the manner required by law, gave notice that a "public hearing" would be held and the date thereof.

█ Appellant tool company's contention that the postcard notices were improperly mailed, because the names and addresses were taken from the records of the county assessor and tax collector instead of from the records of the county assessor alone, as provided in the ordinance, cannot be sustained. It is true that there is in the record a statement by Land Use Engineer Suess that postcard notices were mailed to property owners at the "last known name and address of such owners as shown in the records of the County Assessor and Tax Collector. . . ." The record, however, contains an affidavit by the acting chief engineer that he ". . . caused a postcard notice of public hearing . . . to be mailed to all property owners . . . using for this purpose the last known name and address of such owners as shown upon the records of the Assessor's office of Los Angeles County." █ True, as contended by appellant tool company, this affidavit was not verified until February 14, 1944, some time after the proceedings before the commission and board were completed, but, as was said in *Herman* v. *Santee,* 103 Cal. 519, 524 [37 P. 509, 42 Am.St.Rep. 145], quoting with approval from a note in American State Reports, volume 21, page 52, " ' . . . It is the fact of service of process which confers jurisdiction, and it is a familiar practice in California, as well as elsewhere, when the proof of such service is absent or defective, to permit it to be amended or supplied.' "

█ Furthermore, there is no provision in the Revenue and Taxation Code, or elsewhere, for a tax collector's list different from the assessor's. On the contrary, sections 441 to 444, inclusive, of the Revenue and Taxation Code, provide for such lists, and both the assessor and tax collector use the same.

█ Appellants' next attack upon the legality of the permit issued is founded on the claim that the corporate respondent Hillside Memorial Park failed to meet the requirements of subdivision (d) of section 4 of the ordinance, which provides that there shall be attached to the application, or made a part thereof, "a financial statement of applicant showing the financial ability of applicant to establish, care for, and maintain the cemetery in such a manner as to prevent the

same from becoming a public nuisance." The trial court expressly found that the applicants for the permit fully complied with the mandate of the ordinance insofar as the filing of a financial statement was concerned. Section 8252 of the Health and Safety Code makes it unlawful for any corporation, copartnership, firm, trust association, or individual to engage in the business of operating or maintaining a cemetery, except by means of a corporation duly organized for that purpose. Insofar as the filing of a financial statement in the instant proceeding is concerned, the record reflects that, while no such statement was filed by the corporation itself, the individual respondents filed their personal financial statements with the application; that respondent corporation had been formed solely for the purpose of operating the proposed cemetery and, except for issuing 160 shares of stock to the two individual respondents, had not functioned up to the date when the application for the permit was filed.

The literal requirements of the ordinance were satisfied by the statement that the corporation had no assets, and we are impressed that the spirit of the law was observed when the two and only stockholders of the corporation presented evidence as to what assets would be available should the permit be granted, thus enabling the commission to ". . . consider whether or not . . . applicant can demonstrate adequate financial ability to establish and maintain said proposed cemetery in such a manner as to prevent the proposed cemetery from becoming a public nuisance" (§ 6 of the ordinance). Furthermore, section 6 of the ordinance provides that "The Regional Planning Commission shall also have power to consider whether or not, through a perpetual care fund, or otherwise, applicant can demonstrate adequate financial ability to establish and maintain such proposed cemetery in a manner so as to prevent the proposed cemetery from becoming a public nuisance." At the time respondents filed their application with the commission, they stipulated that the proposed cemetery would be established as a "perpetual care cemetery," for which a Perpetual Care Fund should be established by setting aside in a trust a given amount of cash or a percentage of the sales price of each interment space sold in the cemetery. Based on the individual financial statements, as well as the proposed Perpetual Care Fund, the commission determined as follows:

"3. FINANCIAL STATEMENT AND PERPETUAL CARE FUND.

With the cooperation of the County Auditor and County Counsel, the Commission has thoroughly reviewed and examined from all standpoints the financial and Perpetual Care Fund statements filed with the application, and it is the opinion of the Commission that the Applicants are financially able to establish, operate, and maintain the cemetery so as not to become a public nuisance."

A further answer to appellants' contentions of insufficiency of the financial statements is the fact that 100 per cent of the outstanding stock of respondent corporation was owned by the two individual respondents who made financial statements and who were joint applicants for the permit with the corporation. The identity of the corporation with its two and only stockholders, directors and officers who did file their financial statements, coupled with the Perpetual Care Fund, substantially complies with the requirements of the ordinance and its purposes and intent as heretofore indicated. The permit as issued, subject to the provisions recommended by the commission, requires the corporation to establish and maintain a full and statutory Perpetual Care Fund, thereby supporting the finding of the commission that the cemetery would not become a public nuisance, and that is what section 6 of the ordinance seeks to guard against.

■ Appellants next assert that the provision of section 4(c) of the ordinance, which requires that there must be attached to the application a map containing certain data such as the location, boundaries and description of the property, location of buildings within a mile and a half radius, etc. was not met. Appellants' contention in this regard cannot be upheld. The trial court found that a map was filed in due compliance with the ordinance. This finding was justified, because, in his written report presented at the hearing before the commission, the latter's land use engineer, after detailing all of the requirements of the ordinance with reference to the map, stated: "10. Map marked Ex. A on file with the case shows in detail the conditions heretofore described." And the Reporter's Transcript of the hearing before the commission on July 7, 1943, shows that "Mr. Suess, land use engineer of the Regional Planning Commission, presented the report on factual data concerning this case, and *displayed maps* showing the location of the proposed use and the adjacent land uses." (Emphasis added.) ■ The map was not

included in the Return to the Writ of Review and was, therefore, not before the trial court. Had appellants desired to present the map to the trial court to contradict the hereinbefore mentioned report of the Land Use Engineer, it was their duty to see that the same was included in the return. Upon a petitioner seeking a writ of review rests the burden of seeing to it that the return is filed and that a complete record is made (*Goodrich* v. *Superior Court*, 92 Cal.App. 695, 696 [268 P. 669]). Since appellants were the parties interested in having the action of the board reviewed, the duty devolved upon them to see that the record was complete. When they did not see fit to bring the map into the record, their attack upon it is futile, in view of the aforesaid showing made in the trial court that a map was filed with the commission in conformity with the ordinance and was utilized at the hearings before both the commission and the board.

Finally, appellants attack the sufficiency of the evidence to support certain findings of the trial court, other than those to which reference has hereinbefore been made. In the main, appellants' complaint has to do with procedural steps taken by the commission and the board. We do not, therefore, deem it necessary to narrate in detail the specific objections made to these findings. Suffice it to say that a reading of the record convinces us that the findings are supported by substantial evidence; that a full and fair hearing was had before the commission and the board. More than 60 protestants appeared before the commission to oppose the granting of the permit and included therein were both of the appellants in the instant proceeding. When the matter came on for hearing before the board, the entire record of proceedings had before the commission was before the board and, at that time, counsel for both appellants were again heard in opposition to the granting of the permit. Section 2 of the ordinance provides that the permit here in question *must be granted* unless it shall *affimatively* appear on the hearing and be found as a fact by the board that the operation of the cemetery in the location proposed would ''jeopardize or adversely affect the health, safety, comfort or welfare of the public.'' The burden of proof, therefore, rested upon appellants and other protestants. Furthermore, the action taken by such board raises the presumption that the existence of the necessary facts had been ascertained and found (*Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d

303, 323 [144 P.2d 4]; *Bartholomae Oil Corp.* v. *Seager,* 35 Cal.App.2d 77, 80 [94 P.2d 614]). The evidence supports the findings, the findings support the judgment, and we find no prejudicial error in the record. The permit was granted after due notice and a full and fair hearing before the proper administrative bodies, at which both appellants appeared and were heard.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied September 25, 1945, and appellant Hughes Tool Company's petition for a hearing by the Supreme Court was denied October 25, 1945.