[Civ. No. 21023.   Second Dist., Div. Two.   Jan. 20, 1956.]

EARL P. MILLER, Appellant, v. PLANNING COMMIS-
SION OF THE CITY OF TORRANCE et al., Re-
spondents.

Sweeney & Stearns for Appellant.

James M. Hall, City Attorney (Torrance), for Respondents.

FOX, J.—In this mandate proceeding petitioner challenges the validity of the action of the city council of the City of Torrance in granting the application of Henry R. Halvorson for a zone variance for the purpose of building and operating a mortuary.

The property involved comprises Lots 6, 7, 8, and 9, Block 11, of the Torrance Tract. It is located on the northwest corner of Cravens Avenue and Engracia Street, and is zoned C-1, which is for retail commercial uses. Another mortuary is located on the northeast corner of this intersection, directly across the street from the subject property; a telephone building and a church are on opposite sides of the property in question; and a building for the use of the state is to be erected on the opposite corner.

Section 16 of the Land Use Ordinance (No. 612) deals with the subject of variances: Paragraph "A" provides for the initiation of such proceedings "upon the verified application of any property owner. . . ." Paragraph "B" provides that "Before a variance may be granted it shall be shown:

"1. That there are special circumstances attached to the property referred to in the application or motion which do not apply generally to other properties in the same district;

"2. That the granting of such variance is necessary to do substantial justice, and to avoid practical difficulty, unnecessary hardship, or results inconsistent with the general purposes of this Ordinance;

"3. That the granting of the variance will not result in material damage or prejudice to other property in the vicinity, nor be detrimental to the public safety or welfare."

Paragraph "D" provides that the application for a variance, in addition to setting forth in detail such facts as in

the opinion of the applicant or Planning Commission pertain to Paragraph "B" *supra*, shall be accompanied by:

(a) Complete plans and description of the property, and proposed use, with ground plans and elevations for all proposed buildings;

(b) Reference to the provisions of the ordinance from which the property is sought to be excepted;

(c) Names and addresses of all owners of property within 300 feet;

(d) Evidence of the ability and intention of the applicant to proceed with actual construction within six months from date of approval.

Paragraph "E" provides for public hearings and the notice thereof that must be given.

Paragraph "F" provides that within 40 days after the conclusion of public hearings the planning commission shall render its decision. If, in the opinion of the commission, the conditions of Paragraph "B," *supra*, have been satisfied, it shall recommend to the city council the granting of the variance; otherwise it shall recommend a denial.

In his verified application Halverson stated that he was the legal owner of the property through purchase then in escrow: that the lots were zoned C-1, i.e., for retail commercial uses, and that he desired a variance from the present zoning for the establishment of a mortuary. He attached, as Exhibit B, a drawing denominated a plot plan, which is drawn to scale by an architect and shows the location of the improvements on the land, the provisions for parking, and the areas for planting. This drawing also gives the floor plan, the sizes of the rooms with their apertures, and their proposed use. The applicant further stated that "The present zoning is creating unnecessary hardship and practical difficulties in making use of this property by imposing greater restrictions than now in use on surrounding property" in that this "property is in C-1 zone—C-2 uses in area." The application also stated that "The granting of this Variance will not devaluate or change the character of the surrounding property or retard the further development of the neighborhood," and gives as the reason therefor that "The variance being granted will improve said property by permitting the construction of a beautiful building with attractive landscaping which will tend to better the neighboring properties." There was also attached to the application, as required by the ordinance, a list of the property owners, with their addresses and the legal

descriptions of the property they owned within 300 feet of the exterior boundaries of the subject property. Notice of the hearing before the planning commission was sent to these property owners and public notice thereof was published in the local newspaper, as provided in the ordinance. This matter was before the planning commission on six occasions and twice before the city council, covering a period of more than four months. When the application first came before the planning commission a committee composed of Commissioners Whitcomb (chairman), Hill and Minter were appointed "to study this case and make a recommendation."[1] At subsequent hearings various aspects of the situation were presented to the commission. These included the parking problem in relation to "existing businesses, such as the present mortuary, the telephone company, the Department of Motor Vehicles, the hospital, churches and the Woman's Club . . . ;" the asserted lack of need for another mortuary in the city, and its likely effect on property values; other possible uses of the property, such as "a drive-in market or other type of business zoned for C-1;" and the question as to whether or not the applicant, Mr. Halverson, owned the subject property. It was pointed out that the proposed plan provided for 32 parking spaces. Numerous protests were filed as were several petitions in favor of granting the variance. One of the latter referred to the type of businesses in the immediate area as herein enumerated, stated that such surrounding development indicated the subject property was not suitable for any other purpose, and expressed the feeling that "there is a definite need for a second mortuary in the city of Torrance." During the course of the hearings it was stated that the proposed improvement would be "a clean type of building" and "there would be more than ample off-street parking provided."

In making the motion to recommend to the city council the approval of the application for the variance, Commissioner Lynn said that "he had looked into this case thoroughly." His motion was seconded by Commissioner Whitcomb, who was chairman of the committee appointed to

[1]Section 16 D2 of the Land Use Ordinance, provides as follows: "2. The Planning Commission shall cause to be made by its own members . . . such investigations of fact bearing on such application as will serve to provide all necessary information to assure that the action on each such application is consistent with the intent and purpose of this Ordinance."

investigate this matter. The motion was carried by a seven to one[2] vote with one commissioner absent.

Mr. Miller, petitioner herein, appears to have been present at all the hearings before the commission and to have had full opportunity to express his views. When the commission's recommendation came before the city council, Miller and another property owner were represented by counsel. At this hearing the various aspects of the matter were discussed and in particular the parking problem and the ownership of the property. The opinion was expressed that the subject property was not suitable for retail business due to the traffic problem. In this connection one councilman suggested the possibility that the city might desire to acquire these lots for off-street parking. On the question of ownership, Mr. Halverson exhibited a deed to the property. The matter appears to have been thoroughly considered by the city council, after which that body voted to grant the variance.

Petitioner's principal contention is that there is no evidence to support the recommendation of the planning commission and the decision of the city council or the judgment of the trial court. In order to evaluate this contention we must first take into account two pertinent presumptions. The first of these is "That official duty has been regularly performed." (Code Civ. Proc., § 1963, subd. 15.) In this connection it will be recalled that the ordinance authorized the planning commission to cause an investigation to be made by its members of the facts bearing upon such an application, and that at the outset the president of the planning commission appointed a committee, headed by Commissioner Whitcomb, to study this matter and make a recommendation. Although the record does not reveal the making of a report by this committee, the presumption is that it performed its official duty and did make the investigation and recommendation contemplated by the ordinance and motion. It is significant that the chairman of this committee seconded the motion to recommend the approval of the proposed variance and that

[2]The negative vote was cast by a commissioner who was the managing director of the mortuary across the street from the subject property. He explained, however, that ''his reason for voting 'No' was because he didn't think the Planning Commission had the proper jurisdiction.'' While it is not entirely clear just what the commissioner meant by this statement, the discussion immediately before the vote was taken related to the question as to whether or not Halverson owned the subject property. The commissioner was apparently not satisfied that Halverson did in fact own it and thus have a right to file an application for a variance which would invoke the jurisdiction of the commission.

all members of the commission who were present except the commissioner who was manager of the mortuary across the street from the proposed location of this new mortuary voted in favor of the motion.

The second presumption is that "In connection with the action of such a commission, composed usually of laymen, the fact that a certain action is taken raises the presumption that the existence of the necessary facts had been ascertained and found." (*Bartholomae Oil Corp.* v. *Seager*, 35 Cal. App.2d 77 [94 P.2d 614].) This principle is quoted with approval by the Supreme Court in *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, at 323 [144 P.2d 4]. Other cases which support this principle are: *North Side etc. Assn.* v. *County of Los Angeles*, 70 Cal.App.2d 598, 608 [161 P.2d 613]; *Cantrell* v. *Board of Supervisors*, 87 Cal.App.2d 471, 479 [197 P.2d 218]; *Swars* v. *Council of City of Vallejo*, 33 Cal.2d 867, 872 [206 P.2d 355]. The expression of the court in the Bartholomae Oil Corp. case, *supra*, as to this presumption is particularly apropos here since that case, too, involved the approval of an application for a variance. The zoning ordinance (No. 440), provided, *inter alia*, that "If the Planning Commission finds that detriment or injury to the neighborhood will not result from issuance of a permit as applied for, it may approve said permit and transmit the same . . . to the City Council for approval . . ." In the commission's report to the city council approving the application it stated that "the requirements of Ordinance 440 have been complied with and the Planning Commission respectfully recommend the issuance of the permit." The court then observed (p. 80) that "The statement in the report that the requirements of Ordinance No. 440 had been complied with implies that the Planning Commission had found that detriment or injury to the neighborhood would not result from the issuance of the permit for which application had been made." It was in this factual setting that the court pointed out that the fact that certain action is taken by such a commission "raises the presumption that the existence of the necessary facts have been ascertained and found [p. 80]." It is clear that this principle applies to the instant proceeding.

In view of the institutional type of development in this immediate area, the inference that the subject property is not suitable for retail commercial (Zone C-1) business, the presence of a mortuary just across the street, the need

for a second such business in the city, the provision for parking and planting, the presumption that the committee appointed by the commission to study this matter and to make a recommendation thereon duly performed its official duty in the premises, and the further presumption that in making the recommendation the variance be granted, the commission had sufficient facts and circumstances before it to justify its determination that the conditions specified in section 16-B of the ordinance (quoted *supra*) had been fully met, it cannot be said, as a matter of law, that the evidence is not sufficient to support the decision of the planning commission and the city council. (*Bartholomae Oil Corp.* v. *Seager, supra*; *North Side etc. Assn.* v. *County of Los Angeles, supra*; *Swars* v. *Council of City of Vallejo, supra.*) It therefore follows that it cannot be held, as a matter of law, that the findings of the trial court are lacking in evidentiary support.

■ Petitioner asserts he has been denied procedural due process and equal protection of the law. His thesis here is that Halverson's application was not accompanied by complete plans and evidence of his ability and intention to proceed with actual construction within six months from date of approval as provided by section 16-D of the ordinance. The furnishing of such information *with the application* is not made a condition, either expressly or by implication, of its approval. These provisions are clearly directory and simply specify a proper time and occasion for supplying this information. If it is furnished prior to the action of the planning commission the purpose of the ordinance has been satisfied, for no one has been prejudiced. Here, Exhibit C. which is denominated a "Plot Plan," is part of the application. While this exhibit does not contain detail plans and elevations such as would be shown on a blueprint, it does contain more information than its title would indicate. It was a substantial compliance with the ordinance. The application, however, does not contain any information as to Halverson's ability and intention to proceed with actual construction. This, however, was an area in which we may presume the committee appointed by the commission to study and report on this matter developed sufficient information to satisfy the commission in view of its favorable action. (*Bartholomae Oil Corp.* v. *Seager, supra*; *North Side etc. Assn.* v. *County of Los Angeles, supra*; *Swars* v. *Council of*

*City of Vallejo, supra.*)   It is thus apparent that there is no merit in petitioner's constitutional arguments.

The variance was granted after due notice, fair hearings and thorough consideration by both the planning commission and the city council.   We find no basis for a reversal of the judgment.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.