[L. A. No. 17443.  In Bank.—August 23, 1940.]

DAVID R. RUBIN et al., Respondents, v. THE BOARD OF DIRECTORS OF THE CITY OF PASADENA et al., Appellants.

120

Harold P. Huls, City Attorney, H. Burton Noble, Assistant City Attorney, Fred G. Conrad and Thomas W. Le Sage, Deputies City Attorney, for Appellants.

Joseph L. Lewinson and Donald Armstrong for Respondents.

EDMONDS, J.—After municipal authorities had denied an application to rezone certain property, the owner successfully prosecuted a proceeding in the superior court for a writ of mandate directing the legislative body to grant a variance and exception from the zoning ordinance. The case is here upon the city's appeal from the judgment ordering a peremptory writ to issue.

The zoning code of the city of Pasadena was adopted in 1922. It provides for variances and exceptions to be allowed by the zoning committee of the Planning Commission, and for an appeal from a determination by that body to the board of directors of the city. Upon such an appeal, "the board, in conformity with the provisions of this ordinance, may reverse or affirm, wholly or partly, or may modify any decision, determination or requirement of the zoning committee, and may make such decision or determination or may impose such conditions as the facts warrant, and may grant a variance or exception, and its decision or determination shall be final." (Sec. 12, subd. d–1.)

The property in controversy is located at the corner of California Street and Mentor Avenue in the city of Pasadena. Mentor Avenue is the next street east of Lake Avenue and runs parallel with it. The intersection of Lake Avenue and California Street is what may be termed a neighborhood business center in the residential district of a city; each of the four corners is devoted to business use and the commercial zone extends along Lake Avenue for several hundred feet in each direction from California Street. Business has been allowed on California Street east of Lake Avenue for a distance of 225 feet on its southerly side, and the westerly line of the lot in controversy, when acquired by the respondents in 1925, was the easterly boundary of the commercial zone. Mentor Avenue then and at the time the respondents' present application for variance was made, was zoned for residential uses.

In 1930 the respondents applied for and were granted a variance upon the westerly forty feet of their property, which adjoined a store building fronting on California Street, and immediately erected a building which has since been occupied by a chain grocery organization. This variance was granted upon the condition that the residence facing Mentor Avenue be moved forward and left on the lot. In other words, the city authorities allowed business to extend along the south side of California Street forty feet more to the east of Lake Avenue, but maintained the zoning restrictions on Mentor Avenue by requiring the respondents to maintain the residence facing on that street. The residential character of Mentor Avenue was further protected by prohibiting any access to the store building from the adjoining property.

In 1938 the respondents filed an application with the city's Planning Commission requesting a further variance from the existing zoning restrictions applying to the remainder of their property in order to use it for automobile parking. After notice to other property owners, the zoning committee of the Planning Commission held a public hearing, and later denied the application upon several grounds. It specified that there were no exceptional circumstances or conditions applicable to the property involved, or to the intended use of the property, that did not apply generally to the property or classes of uses in the same zone so that a denial of the variance would result in no undue property loss to the applicant; that the variance was not necessary for the preservation and enjoyment of a property right of the applicant; and, that the operation of a parking lot at this location would be injurious to the property or improvements of other owners of property. Thereupon the respondents appealed to the city's board of directors, which, after a public hearing and an inspection of the property, denied their application for the same reasons stated by the Planning Commission.

The respondents then filed the present action. Their petition alleges that the necessary requirements of the zoning ordinance were proved by them. Facts concerning changed conditions over a period of years are also alleged. For these reasons, the petition continues, the board acted arbitrarily and abused its discretion, and denied to them their constitutional rights.

General and special demurrers and a motion to strike were directed against the conceived deficiencies of the petition. The demurrers were overruled and the motion to strike denied. Thereafter the board by way of answer and return, denied the material allegations of the petition.

A trial *de novo* was then had and the court made findings that since the property was purchased by the respondents, changes have occurred in its vicinity because of the growth of business which renders the respondents' property unfit for residential purposes; that its value for business uses is $250 per front foot as against $20 per front foot for residential purposes; and that the store building erected by the respondents on the west 40 feet of their property cannot be advantageously leased unless the adjoining corner lot can be used for parking purposes.

Other findings of fact are exactly contrary to those of the city's zoning committee. From them the trial judge determined, as conclusions of law, that in denying the respondents' application for a variance, the board of directors applied the zoning code in an arbitrary and discriminatory manner and deprived them of their property without due process of law.

The appellants contend that the determination of the board of directors is not reviewable because the zoning code expressly declares that its decision shall be final. They also assert that the board of directors is under no legal duty to grant a request for a variance; that *mandamus* will not lie to control or review the exercise of discretion by a board having *quasi*-judicial functions unless there has been a clear abuse of such discretion; and that the evidence supports the findings made by the board of directors and does not support those made by the trial judge. Many other points are also urged. In the main, these are included within the four which have been stated.

On the other hand, the respondents claim, in support of the judgment, that where property rights are involved, due process requires the judicial review of decisions of administrative bodies; that the reviewing court must grant a trial *de novo* upon the law and the facts where the record before the board is inadequate, and it must exercise an independent judgment in reviewing the board's decision. Further, the respondents contend, mandate is the only remedy by which a decision of an administrative board may be reviewed in California.

A zoning ordinance places limitations upon the use of land within certain areas in accordance with a general policy which has been adopted. But because compliance with the ordinance may present unusual difficulties as to certain property, almost every zoning ordinance includes provisions under which an owner may apply to an administrative board for permission to put his land to a non-conforming use. This procedure has been devised in order to minimize the acknowledged evils of "spot zoning" by amendment of the zoning ordinance. It provides the opportunity "for amelioration of unnecessary hardships which, owing to special conditions, would result from literal enforcement of the restrictive features of the ordinance". (*Thayer* v. *Board of Appeals of City of Hartford,* 114 Conn. 15 [157 Atl. 273].) Of even more importance is the fact that in granting a variance, municipal authorities may usually attach conditions controlling the excepted use in accordance with the spirit and purposes of the general zoning plan. For example, the Pasadena zoning code provides for the imposition of "such conditions as the facts warrant", and the variance granted to the respondents in 1930 included requirements limiting the permitted use of their lot in such manner that it would conform as nearly as possible to that of the surrounding property.

Unlike the "spot zoning" obtained by amendment of the general zoning ordinance, a variance or exception sanctions a deviation from the standard under the dispensing power vested in the administrative body. (*People ex rel. Fordham M. R. Church* v. *Walsh,* 244 N. Y. 280 [155 N. E. 575].) This authority is entirely different from a licensing power under which permission may be granted to do an act or conduct a business when the applicant has complied with the requirements of the law under which the license is sought. Ordinarily, under such circumstances, the administrative body must issue a license. On the other hand, the grant of dispensation is a matter of grace, and a refusal is not the denial of a conditional statutory right; it merely leaves in operation the statute adopted by the legislative body. (*People ex rel. Fordham M. R. Church* v. *Walsh, supra.*)

The application for a variance necessarily admits the constitutionality of the ordinance under which the city officials charged with the duty of administering a zoning ordinance are asked to exercise a discretion; therefore, an appli-

cant may not challenge its constitutionality before the administrative body. For if an attack on constitutional grounds was successful, the discretionary power of the board would also fall. In a proceeding to review a decision denying a variance, it has been held that "the sole question before the court is the propriety of the action of the board upon the application addressed to its discretion, and the petitioner will not be heard upon the question of the constitutionality of the act of the Legislature under which the ordinance was enacted." (*Drabble* v. *Zoning Board of Review,* 52 R. I. 228 [159 Atl. 828].)

The nature of the proceedings before a zoning board to secure a variance under a statute quite similar to the Pasadena ordinance was also considered in *Board of Zoning Appeals* v. *Waintrup,* 99 Ind. App. 576 [193 N. E. 701], where the court said: "There is no law that requires the board of zoning appeals to grant the variance. It is wholly within its discretion, and the board having the power to exercise that discretion, its decision is not reviewable by the courts, provided there was no illegality in its proceedings. The power and discretion to vary the ordinance rests solely with the board of zoning appeals, and when it refuses to vary the ordinance, it leaves the ordinance in full force as originally passed by the city council and the property subject to the use provided therein."

In that case it was charged that the decision of the board was a taking of property without due process of law and without just compensation. But the court declared: "It is not the act of the appellant that deprived him of any use of his property, but the act of the common council in passing the ordinance; and, if appellee's rights have been invaded by this ordinance, as he claims, his remedy is by an attack upon the ordinance, and not by a proceeding to review the decision of the board of zoning appeals." (See, also, *Arverne Bay Const. Co.* v. *Thatcher,* 278 N. Y. 222 [15 N. E. (2d) 587, 589, 117 A. L. R. 1110].)

The Pasadena zoning code declares that the zoning committee in the first instance, or the board of directors upon appeal, may, where certain conditions exist, grant a variance. This provision is not a mandatory one, and the permissive power granted to each body is to be exercised or not, as discretion dictates. When an application for a variance is

passed upon by the board of directors, its decision, says the zoning code, "shall be final". This provision is a perfectly proper one and, for the reasons which have been stated, must be upheld. Even where, by the terms of a zoning ordinance the decision of the municipal authority upon an application for variance was not expressly declared to be final, the Indiana Appellate Court said that "its decision is not reviewable by the courts, provided there was no illegality in its proceedings". (*Board of Zoning Appeals* v. *Waintrup, supra.*)

But the finality of the board of directors' determination does not bar the respondents from asserting in a judicial proceeding that the zoning law is unconstitutional as applied to their property. (*Skalko* v. *City of Sunnyvale,* 14 Cal. (2d) 213 [93 Pac. (2d) 93] ; *Hurst* v. *City of Burlingame,* 207 Cal. 134 [277 Pac. 308].) And although the same type of evidence may be used in that proceeding as was presented to the zoning committee and board of directors in support of the application to secure the variance, the issues are not the same and its denial is not *res judicata* upon the constitutional question. (*Arverne Bay Const. Co.* v. *Thatcher, supra; Board of Zoning Appeals* v. *Waintrup, supra.*)

Petitioners urge that the decision of *Drummey* v. *State Board of Funeral Directors,* 13 Cal. (2d) 75 [87 Pac. (2d) 848], is controlling, and therefore the judgment of the superior court rendered after a consideration of the evidence *de novo* should be sustained if there is any substantial evidence to support its conclusions. In that case it was contended that the action of the board of funeral directors in suspending the license of an embalmer was final and could not be judicially reviewed. This court concluded that such a license is property and may not be revoked by an administrative body without the right of review by a trial court exercising an independent judgment upon the evidence introduced.

However, in the present case the question is an entirely different one. When the board of directors of Pasadena denied petitioners' application for a variance it did not take away a property right, but merely refused to grant a favor. Its action left the petitioners' property subject to the zoning restrictions then in force. If these provisions invade the respondents' constitutional rights there is an appropriate remedy open to them, but under the circumstances here shown

*mandamus* will not lie to review the decision denying a variance.

This conclusion makes it unnecessary to consider the other points presented.

The judgment is reversed with directions to the superior court to dismiss the proceeding.

Shenk, J., Curtis, J., and Gibson, C. J., concurred.

Houser, J., concurred in the judgment.
Rehearing denied.