[Civ. No. 21546.   Second Dist., Div. Three.   July 23, 1956.]

WALT A. STEIGER, Appellant, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Respondents.

C. Paul Du Bois, Arkin & Weissman and Stuart N. Arkin for Appellant.

Harold W. Kennedy, County Counsel, Edward H. Gaylord, Deputy County Counsel, and Donald H. Blanchard for Respondents.

VALLÉE, J.—The Board of Supervisors of the County of Los Angeles granted defendant Baldwin Hills Hospital Corporation an exception from the provisions of the county zoning ordinance, the effect of which is to permit it to build a hospital on property which it owns. The appeal is from a judgment denying a writ of mandamus to compel the board to annul its order and dismissing the proceeding.

The complaint is in three counts: the first count is denominated for a writ of review; the second, for a writ of mandate; the third, for declaratory relief. Plaintiff alleges he is the owner of property in the county of Los Angeles,

its location, and that he brings the proceeding for himself and 250 other persons who own property within half a mile of the property in question. Defendants filed a return consisting of a demurrer, an answer, and a stipulation of facts. The matter was thereupon submitted to the court for decision. The court denied a writ of mandamus and dismissed the proceeding after reviewing the record before the board. No question is raised with respect to the denial of a writ of review or of declaratory relief. The only attack is on the denial of a writ of mandamus.

The property involved consists of about 6½ acres in unincorporated territory. In 1946 a group of physicians and surgeons purchased the property. They organized defendant Baldwin Hills Hospital Corporation, called the Hospital, and conveyed the property to it. At that time the property was zoned M-3, which permitted it to be used for a hospital. In March 1954 part of the property was zoned R-1, single family residence, and part R-3, limited multiple residence.

In the summer of 1954 the Hospital applied for a zone exception to permit it to construct, operate, and maintain a general hospital on the property. The county regional planning commission denied the application. No appeal was taken to the board of supervisors. In February 1955 the Hospital again applied for a zone exception for the same purpose. The planning commission denied the application. The Hospital appealed to the board of supervisors. The board granted the exception. This proceeding followed.

The following are pertinent provisions of the zoning ordinance of the county of Los Angeles:

"SECTION 521. GROUNDS IN GENERAL. AN EXCEPTION MAY BE GRANTED EXCEPTING PROPERTY FROM SOME PARTICULAR RESTRICTION OR RESTRICTIONS APPLICABLE TO THE ZONE IN WHICH SUCH PROPERTY IS LOCATED IF:

"(A) THE EXCEPTION IS NECESSARY FOR THE PRESERVATION OF A SUBSTANTIAL PROPERTY RIGHT OF THE OWNER.

"(B) SUCH EXCEPTION WILL NOT BE MATERIALLY DETRIMENTAL TO THE PUBLIC WELFARE NOR TO THE PROPERTY OF OTHER PERSONS LOCATED IN THE VICINITY THEREOF. . . ."

Section 522. An exception may also be granted where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, and in the granting of such exception the spirit of the ordinance will be observed, public safety secured, and substantial justice done."

"Section 529. Necessary Uses. An exception may also be granted for any use necessary to the maintenance of the public health, convenience or general welfare, including churches, temples or other places used exclusively for religious worship, public utilities, public schools, private schools which offer instructions in the several branches of learning and study required to be taught in the public schools by the Education Code of the State of California and not furnishing room or board and other governmental purposes if such use is necessary to and not detrimental to, the community, and in granting of such exception the spirit of the ordinance will be observed, public safety secured and substantial justice done. . . ."

"Section 659. Notice of Appeal. Within fifteen days after the receipt by the applicant for an exception, permit or other approval, or receipt by the person the revocation of whose permit, exception, or other approval is under consideration, of notice of the action of the Commission, any person dissatisfied with the action of the Commission may file with the Clerk of the Board of Supervisors an appeal from such action. . . ."

"Section 662. Action by Board of Supervisors. Upon receiving a notice of appeal the Board of Supervisors may:

" (a) Affirm the action of the Commission, or

" (b) Require a transcript, or recording of the testimony and all other evidence upon which the Commission made its decision. Upon receiving such evidence the Board of Supervisors shall take such action as, in its opinion, is indicated by such evidence; . . ."

"Section 664. Limitation on Receipt of Evidence. In deciding an appeal the Board of Supervisors shall not hear or consider any evidence of any kind other than the evidence received from the Commission, or any argument on the merits of the case other than that contained in the Notice of Appeal, unless it sets the matter for hearing before itself, as provided in this Article, and gives the same notice of hearing as is required for hearings before the Zoning Board by Article 2 of this chapter."

"Section 665. Finality. The decision of the Board of Supervisors upon an appeal is final and conclusive as to all things involved in the matter." In the case at bar the board followed the procedure prescribed in section 662(b).

A zoning ordinance authorizing a planning commission to grant or deny an exception and providing for an

appeal to the legislative body which created the commission is valid. (Stats. 1937, ch. 665, § 14, p. 1824; Stats. 1947, ch. 807, § 71, p. 1919, now Gov. Code, § 65540; 2 Deering's Gen. Laws, Act 5211b, § 6.3; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 361-363 [203 P.2d 37]; *Mitchell* v. *Morris,* 94 Cal.App. 2d 446, 448-451 [210 P.2d 857]; see *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 71-78 [187 P.2d 686]; *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471, 475 [197 P.2d 218].)

A granting of a variance rests largely in the discretion of the body designated by the zoning ordinance for that purpose. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 691 [234 P.2d 972].) The grant of an exception raises the presumption that the existence of the necessary facts had been ascertained and found. (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 360 [203 P.2d 37].) Whether the granting of an exception was wise as a matter of policy is not for the courts. "The rule is indelibly written into our law that all questions of policy and wisdom concerning matters of municipal affairs are for the determination of the legislative governing body of the municipality and not for the courts. In the exercise of the policy power a large discretion is vested in the legislative branch of the government. The function of the courts is to determine whether or not the municipal bodies acted within the limits of their power and discretion. Courts are not authorized to entertain a hearing de novo and then make such order as in their opinion the municipal authorities should have made. Were the rule otherwise, courts would be usurping the functions of the municipal governing body (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R. 990]). The determination of what harmonizes with the elements and objectives of the master zoning plan having been committed to the discretion of the local governing bodies, the burden of proving that the city council acted without substantial evidence and in excess of jurisdiction, rested upon appellants. And this requirement is not satisfied by a mere showing that there was a conflict in the evidence, or that the city council on the basis of the record before it, might have been justified in deciding differently, or that the record before the council might have supported a conclusion contrary to that which was arrived at (*Hogan* v. *Retirement Board,* 13 Cal.App.2d 676, 677 [57 P.2d 520])." (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 361 [203 P.2d 37]; *Bradbeer* v. *England,* 104 Cal.App.2d 704, 707 [232 P.2d 208].)

"The ordinance gives the board, on appeal, the power to proceed as it did here, to require a transcript of the testimony and all other evidence upon which the planning commission made its decision and, upon receipt thereof, take such action as, in its opinion, may be indicated by the evidence." (*Meyers* v. *Board of Supervisors,* 110 Cal.App.2d 623, 628 [243 P.2d 38].) ▉ A provision of a zoning ordinance that the decision of the board on an appeal for an exception shall be final is a perfectly proper one and must be upheld. (*Rubin* v. *Board of Directors,* 16 Cal.2d 119, 125-126 [104 P.2d 1041].)

There was evidence before the board of these facts: The property in question fronts on the north side of Slauson Avenue, a major highway in Los Angeles. The surrounding property is undeveloped. Houses closest to the property "are a considerable distance away." The property to the south of Slauson is subdivided with streets in, but no construction. There is a golf course adjacent to the property on the west which is zoned C-R, commercial-recreational. The area in which the property is included was zoned R-1 and R-3 on March 30, 1954. Two-story apartments may be built south of Slauson under present zoning. The property is "ideally situated" for a hospital with "a golf course on the west and open territory around it." The delay in construction since 1946 was because there were no water or sewage facilities, which were installed in 1952 or 1953. Within a 5-mile radius of the property there are about 530,000 residents and 12 hospitals comparable to the one proposed by defendant Hospital with 558 beds, or about one bed for 1,000 of population. There should be 4 or 5 beds for each 1,000 of population. In San Francisco and Alameda Counties there are 6.2 beds per 1,000. Open areas within the 5-mile radius will be developed within the next few years. The Los Angeles area is badly in need of hospital facilities. Since the prior application there has been a great influx of people into the Los Angeles area; there have been many homes built within the 5-mile radius. Various maps, photographs, and other data were before the board. It is manifest there was substantial evidence before the board to warrant granting the exception under any one of the provisions of the ordinance empowering the board to grant exceptions. There was other evidence, but it merely created a conflict.

The grant of the exception did not give the Hospital any right which was not theretofore vested in it. It merely

removed the impediment imposed by the ordinance zoning the area R-1 and R-3. The exception does not restrict plaintiff or those he purports to represent in the use of their property. And they have no vested right in the maintenance of restrictions on the Hospital property. ■ Zoning regulations are not contracts of the county and they may be modified.

Plaintiff contends that the prior denial of an exception is res judicata and precludes granting an exception on a second application. The contention is untenable. ■ The doctrine of res judicata has no application to an administrative agency such as the board of supervisors. ■ "For the defense of res judicata to operate as an estoppel there must be a judgment rendered by a court of competent jurisdiction." (*Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 48 [168 P.2d 686]; *Altadena Community Church* v. *State Board of Equalization*, 109 Cal.App.2d 99, 105 [240 P.2d 322]; *Ogier* v. *Pacific Oil & Gas Dev. Corp.*, 135 Cal.App.2d 776, 781 [288 P.2d 101]; *State* v. *Zoning Board of Appeals*, 254 Wis. 42 [35 N.W.2d 312, 313].) Furthermore there was evidence of changed conditions and circumstances. ■ The fact that a prior application for an exception has been denied does not prevent the granting thereof on a new application under changed conditions and circumstances. (See authorities collected 168 A.L.R. 127.)

■ The zoning ordinance provides that not less than 10 days prior to the date of any hearing, the director shall "[c]ause a copy of a notice of the time and place of such a hearing to be published once in a newspaper of general circulation in the County of Los Angeles." Notice of the hearing was published in the Culver City Evening Star-News more than 10 days prior to the hearing. Plaintiff claims, as we understand him, that the "Star-News" is not published in the county of Los Angeles and therefore there was a want of jurisdiction and a denial of due process. The argument seems to be that because the "Star-News" was published in Culver City it was not published in the county of Los Angeles. The court found "[t]he Evening Star-News on February 3, 1955 was, at all times since has been, and now is a newspaper of general circulation published in the County of Los Angeles." The evidence supports the finding. Culver City is in the county of Los Angeles. A newspaper published in Culver City is necessarily published in the county of Los

Angeles. (See *In re Christensen,* 104 Cal.App.2d 375 [231 P.2d 152].)

Without stating a point as required by the rules, plaintiff argues that the board of supervisors did not seriously consider the matter. In their answer to the petition for a writ of mandamus defendants allege, "Each member of the Board of Supervisors read the transcript of zone exception case No. 1918 [this case] and based his vote thereon," and "that the testimony and objection of all witnesses were carefully considered and weighed by every member of the Board of Supervisors." ■ In mandamus proceedings the answer of the defendant is accepted as true unless controverted by the plaintiff. (*Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 623 [191 P.2d 426].) The quoted averments were not controverted by plaintiff and must be accepted as true. ■ In the absence of a showing that any member of an administrative board did not read, or was not familiar with, the evidence adduced at a hearing, the law presumes that the decision of the board was made after consideration of the evidence. (*Cooper* v. *State Board of Public Health,* 102 Cal. App.2d 926, 931 [229 P.2d 27].)

The board of supervisors proceeded strictly in accord with the zoning ordinance and substantial evidence supports its conclusion.

Plaintiff also appealed from an order overruling the demurrer and ordering judgment for defendants. This order is nonappealable and the appeal therefrom must be dismissed.

The appeal from the order is dismissed. The judgment is affirmed.

Shinn, P. J., concurred.

WOOD (Parker), J.—I concur in the judgment. Although the board of supervisors followed the strict "letter of the law," as proclaimed in its ordinance allegedly providing for notice to property owners, the ordinance is one which, for all practical purposes of giving notice and according "due process of law" to property owners, is a total failure. The fact is that, regardless of the legal formalism of complying with an inadequate ordinance, there was no notice to the property owners as a result of the newspaper notice. There was evidence that the Culver City newspaper did not have any circulation in the area involved here. The policy of fair dealing

requires that a notice, which is calculated to give notice, should be given to property owners whose rights will be affected by spot zoning. If local political subdivisions cannot enact ordinances providing for adequate notice in such cases, it would seem that the matter should have the attention of the Legislature.