[Civ. No. 17311.   First Dist., Div. Two.   Dec. 16, 1957.]

JEAN C. FLAGSTAD, Plaintiff and Appellant, v. CITY OF SAN MATEO et al., Defendants; HARRY REGAN et al., Defendants and Appellants.

O'Gara, McGuire & Speirs, O'Gara, McGuire, Danielson & Speirs, James A. O'Gara, Jr., William F. Seeley and Cyril Viadro for Plaintiff and Appellant.

Anderson & McMillan, P. E. Bermingham, W. A. Henderson, S. Hamilton and Edward R. FitzSimmons for Defendants and Appellants.

DRAPER, J.—Defendants Regan and General Petroleum Corporation, as lessor and lessee, applied for a zoning variance permitting construction and operation of a service station. After a tie vote in the city planning commission, the application was heard by the city council, which granted the variance in modified form. Plaintiff, owner of adjoining property, brought this action seeking writ of mandate or of review. Upon return to the alternative writ and after full hearing, the trial court issued writ of mandate invalidating the grant of variance and directing further hearing by the city council. Defendants lessor and lessee appeal from the judgment. Plaintiff appeals from that portion of the judgment which directs further hearing by the council.

Under the San Mateo zoning ordinance, a variance may be granted "provided that the Council, after a full investigation and public hearing, . . . shall have found all of the following to be true:

"a. That there are exceptional or extraordinary circumstances or conditions applicable to the property involved, or the intended use thereof, which do not apply generally to the property or class of uses in the district, so that a denial of the application would result in undue property loss;

"b. That such variance would be necessary for the preservation and enjoyment of a property right of the owner of the property involved;

"c. That the granting of such variance would not be materially detrimental to the public health, safety or welfare, or injurious to the property or improvements of other property owners, or the quiet enjoyment of such property or improvements."

At the hearing before the council defendants produced detailed plans of the proposed installations, together with a drawing showing the front elevation of the completed building as planned, and a planting plan. Two employees of defendant lessee, its division attorney and its real estate division manager, made unsworn oral statements. Like statements were made by five protestants. In the course of these statements, references were made to existing uses and zoning in the neighborhood. These references are confirmed by a land use map and a zoning map here in evidence.

From all these it appears that: the property is in an R-3 zone, which permits multi-family residences, but not commercial use; it is located at the northwest corner of El Camino Real and Third Avenue, one of the busiest intersections of the

city of San Mateo; the property on the easterly side· of El Camino along the two blocks to the north and a like distance south of applicants' property is zoned and almost wholly used for commercial purposes; service stations are located on the southeast and northeast corners of Third and El Camino, and two more are one block away; the "central business district" of San Mateo is separated from applicants' property only by El Camino; no single family residential use or zone adjoins this land.· The property is 90 feet on El Camino by 127 feet on Third. There were flatly contradictory opinions as to whether the size of this parcel would permit construction, under existing setback requirements, of an apartment house which would yield a return commensurate with the value of the land. No expert evidence as to value was offered. At the outset of the hearing (held on Monday evening), the mayor, in suggesting a continuance, said we "do not get the agenda until Friday night, and it takes Saturday and Sunday to run around and have a look." Members of the council, in expressing views and asking questions during the hearing, displayed familiarity with the physical facts. On the same evening as the hearing in this matter, the council had, by· a like 4 to 1 vote, granted a variance for construction of an office building at the southwest corner of El Camino Real and Fifth Avenue. The council restricted the variance here in issue by making it nontransferable, prohibiting a proposed car-washing operation at the service station, and requiring that the landscaping and its maintenance accord with plans to be approved by the council.

The granting or denial of a variance rests largely in the discretion of the body designated by the zoning ordinance for that purpose (*County of San Diego* v. *McClurken,* 37 Cal. 2d 683, 691 [234 P.2d 972]; *Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605, 613 [126 P.2d 954]). No vested right is affected by either the denial (*Rubin* v. *Board of Directors,* 16 Cal.2d 119, 126 [104 P.2d 1041]) or the grant (*Steiger* v. *Board of Supervisors,* 143 Cal.App.2d 352, 358 [300 P.2d 210]) of a zoning variance.

Where a variance is granted, it is presumed that official duty was performed in the making of the required investigation, and that the existence of the necessary facts was found (*Miller* v. *Planning Com.,* 138 Cal.App.2d 598, 602-603 [292 P.2d 278]; *Bartholomae Oil Corp.* v. *Seager,* 35 Cal.App.2d 77, 80 [94 P.2d 614]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 360 [203 P.2d 37]; see also *Bailey* v. *County of Los Angeles,*

46 Cal.2d 132 [293 P.2d 449] ; *North Side etc. Assn.* v. *County of Los Angeles,* 70 Cal.App.2d 598 [161 P.2d 613] ).

The decision of the municipal body to grant or deny a variance will not be disturbed by the courts in the absence of a clear and convincing showing of an abuse of discretion (*Childs* v. *City Planning Com.,* 79 Cal.App.2d 808, 812 [180 P.2d 433] ; *Otis* v. *City of Los Angeles, supra,* 52 Cal.App.2d 605, 613).

A variance provides the opportunity for amelioration of unnecessary hardships resulting from the rigid enforcement of a broad zoning ordinance, and thus avoids the acknowledged evils of "spot zoning" (*Rubin* v. *Board of Directors, supra,* 16 Cal.2d 119, 124).

Plaintiff argues that the documents and statements before the council do not constitute "evidence." But it is clear that witnesses in a council proceeding of this sort need not be sworn (*Jackson* v. *City of San Mateo,* 148 Cal.App.2d 667 [307 P.2d 451] ). "If perchance the procedure before the council lacked some of the formality observed by judicial tribunals their decision is nonetheless vital and effective" (*Bradbeer* v. *England,* 104 Cal.App.2d 704, 710 [232 P.2d 308] ; see also *Bartholomae Oil Corp.* v. *Seager, supra,* 35 Cal. App.2d 77; *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471 [197 P.2d 218] ). Plaintiff complains that defendants rely upon information acquired by the council members other than at the hearing. The ordinance specifically contemplates "a full investigation and public hearing" by the council. Personal investigation by members of a city planning commission has been relied upon to establish facts required to be shown upon application for a variance (*Miller* v. *Planning Com., supra,* 138 Cal.App.2d 598; *Bartholomae Oil Corp.* v. *Seager, supra,* 35 Cal.App.2d 77). Here the mayor stated at the outset of the hearing that the councilmen had "had a look" at the property. Members of the council asked questions and expressed views at the public hearing which quite fully revealed their investigation. There was no concealment. Those protesting the variance were free to challenge any views so expressed, and took frequent advantage of this opportunity. The elements of council investigation principally relied upon by defendants are matters which would be revealed by observation, such as the fact that defendants' land was unimproved, the nature of the surrounding uses, the fact that traffic at the intersection is heavy. These matters were stated by those who spoke for and against the

variance at the hearing. The observation and the common knowledge of the council members could serve only to confirm or reject these statements. It must be remembered that no vested right is here involved (*Rubin* v. *Board of Directors, supra,* 16 Cal.2d 119; *Steiger* v. *Board of Supervisors, supra,* 143 Cal.App.2d 352) and that this distinguishes the authorities principally relied upon by plaintiff. The decision in *Desert Turf Club* v. *Board of Supervisors,* 141 Cal.App.2d 446, 452 [296 P.2d 882], is based upon the fact that the board "on moral grounds, contrary to the legislative fiat of the people, has in effect excluded all horse racing from all parts of the county." The language relied upon by plaintiff is mere dicta.

The facts of this case bring it fairly within the rule laid down in *Miller* v. *Planning Com., supra,* 138 Cal.App.2d 598; *Bradbeer* v. *England, supra,* 104 Cal.App.2d 704; and *Jackson* v. *City of San Mateo, supra,* 148 Cal.App.2d 667. Upon the authority of these decisions, the action of the city council must be upheld.

Courts must curb carefully the temptation to make policy in the field of zoning variance. The point of view to be satisfied is that of the city council. The courts inquire only whether the decision of the council is arbitrary or capricious, whether it is an abuse of discretion or is without any reasonable justification. Unless so proscribed, the council's determination must stand, regardless of the court's view as to its wisdom. In 1937 the council determined that a service station should not be permitted upon this same property. This court affirmed the city's right to make that determination (*Regan* v. *Council of City of San Mateo,* 42 Cal.App.2d 801 [110 P.2d 95]). Likewise, the decision whether the intervening years have so altered circumstances as to warrant the present use of the land for such a purpose is for the city council. We find no abuse of discretion by that body, and thus have no occasion to interfere with its decision.

Judgment reversed, with directions to the trial court to enter judgment for defendants. Defendants to recover costs on appeal.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 15, 1958, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied February 11, 1958.