[No. 7,907.—In Bank.]
August 19, 1881.

# W. B. TREADWELL v. THE BOARD OF SUPERVISORS OF YOLO COUNTY.

ELECTION OF COUNTY OFFICERS—CONSTITUTIONAL LAW.—Application for writ of *mandamus* to compel the Board of Supervisors of Yolo County to take steps preparatory to the holding of an election on the first Wednesday of September, 1881, for certain county officers.  Application denied. (McKINSTRY and ROSS, JJ., dissented; MORRISON, C. J., expressing no opinion.)

APPLICATION for writ of *mandamus*.

*W. B. Treadwell*, for Plaintiff.

*George F. Baker* and *W. B. C. Brown*, for Defendants.

SHARPSTEIN, J.:

Application for a writ of *mandamus* to compel the Board of Supervisors of Yolo County to take steps preparatory to the holding of an election on the first Wednesday of September of this year, for the election of certain county officers, as provided in Section 4109 of the Political Code as it stood prior to March 7, 1881, when the Legislature attempted to amend it.

The petitioner insists: 1. That the amendatory Act, if constitutional, does not dispense with the holding of an election this year for the officers enumerated in his petition; 2. That if it does, it is repugnant to that provision of the Constitution which prohibits the extension of the term of any officer "beyond the period for which he is elected or appointed." (Const., Art. xi., § 9.)

The Act of March 7, 1881, is entitled "An Act to amend Section 4109 of 'An Act to establish a Political Code,' approved March 12, 1872, relating to the election and terms of office of county, city and county, and township officers, and to repeal Sections 4024, 4027, and 4111 of said Political Code."

By comparing this Act with that of which it purports to be amendatory, it will be seen that an attempt is made to completely revise Section 4109.  As it originally stood, that

section provided for the holding of county elections on the same day that general elections were held, under the late Constitution. The present Constitution has changed the time of holding general elections from the first Wednesday of September to the first Tuesday after the first Monday of November. The intention of the Legislature to make a corresponding change in the Code in relation to the time of holding elections for county and township officers is sufficiently manifest in the amendment of March 7, 1881. The effect of such a revision upon the provisions of the section revised is the point which we will first consider.

In *Murdock* v. *Memphis*, 20 Wall. 617, the Court says: "We are of opinion that it was their (Congress') intention to make a new law so far as the present law differed from the former, and that the new law, embracing all that was intended to be preserved of the old, omitting what was not so intended, became complete in itself and repealed all other law on the subject embraced within it. The authorities on this subject are clear and uniform." (Citing *United States* v. *Tynen*, 11 Wall. 88; *Henderson's* v. *Tobacco*, id. 652; *Bartlet* v. *King*, 12 Mass. 537; *Commonwealth* v. *Cooley*, 10 Pick. 36.)

In this case the intention of the Legislature to revise in the later Act the entire subject-matter of the former one, appears more plainly than it did in any of the cases above cited. And whenever that intention clearly appears, the subsequent Act operates as a repeal of the former, although it contains no express words to that effect. An amendment of a statute will operate precisely as though the subject-matter of the amendment had been originally incorporated in the statute amended, as regards any action had after the amendment is made. (*Holbrook* v. *Nichol*, 36 Ill. 161.)

It does not seem to us that under the authorities there can be any doubt as to the operation of the Act of March 7, 1881. If constitutional, it completely superseded the section which it amended and revised. (*State* v. *Andrews*, 20 Tex. 230.)

Its constitutionality is attacked on the ground that if it dispenses with the holding of an election of county officers this year, it in effect extends the terms of the present incumbents. It is not claimed that it expressly or directly attempts to do anything of the kind. But it is claimed that such

would be the necessary result, because the present incumbents are entitled to hold their respective offices until their successors are qualified. The Code so provides, but if that provision of the Code is repugnant to the Constitution, the Code must give way, and the result would be that all of these offices would become vacant at the expiration of the terms for which the incumbents were elected, and such vacancies would have to be filled in the manner prescribed by law. And if there be no mode provided by law for filling them, they must be filled in the mode provided by Section 8 of Article v. of the Constitution. If either Act is unconstitutional, it is the one which provides that officers shall hold after their terms have expired, and not the one which changes the time of holding the election.

Application denied.

THORNTON, J., concurred.

MYRICK, J., concurring:

I concur in the judgment, upon the ground that, in my opinion, there can be, under the Constitution, no election the present year.

McKEE, J.:

The Constitution of 1879 excepted from the operation of its provisions upon the subject of election of county officers, and their official duties and terms of office, the first election held after its adoption. (§ 20, Art. xx.) It required that the officers to be chosen at the election of 1879 should be elected at the time and in the manner *then* provided by law. (§ 10, Art. xxiii.) The laws regulating that election were not disturbed, but remained in full force and effect as to all officers whose election, duties, and terms of office were to be afterwards regulated and fixed by the Legislature. By them the time and mode of election had been prescribed, and the terms of office had been fixed. (P. C., Art. ii.) And it had been also provided that the officers elected under them should continue to hold until their successors were elected and qualified. (P. C., § 879.) Officers elected at the election of 1879, therefore, continue to be, by the law of their election, officers

*de facto* and *de jure* until the election and qualification of their successors. (*People* v. *Tilton*, 37 Cal. 614; *People ex rel. Stratton* v. *Oulton*, 28 id. 44, 383; *People* v. *Whitman*, 10 id. 38.)

But the successors of the officers elected in 1879, under then existing law, could not be elected until the Legislature, in the exercise of the powers conferred upon it by Section 5, Article xi., of the Constitution, gave effect to constitutional provisions upon the subject of elections by the passage of a general and uniform law for the election in the several counties of the State, of such county, township, and municipal officers as, in its judgment, the public convenience might require, and prescribing their duties, and fixing their terms, and so regulating the subject of elections as to enable the people of the State to adjust themselves to the requirements of the Constitution, which provided for future elections to be held in even-numbered years. (§ 10, Art. xxii.) The Legislature discharged the duty devolved upon it by the passage of the Act of March 7, 1881. This Act took effect immediately upon its passage, and all the constitutional provisions upon the subject of the election of county officers, their terms and duties, as enforced by the Act, became operative; and all the provisions of the Political Code upon the same subject were repealed. There is, therefore, no law in existence which authorizes an election to be held in accordance with the organic and statutory law of the State until the year 1882.

The Act of March 7, 1881, is a law which makes the election of all county officers, and the officers to be elected under it, subject to the provisions of the Constitution. Elections for such officers are only to be held in even-numbered years; the compensation of such officers shall not be increased after their election, nor during their terms of office; nor shall the term of any such officer be extended beyond the period for which he shall be elected. (§ 9, Art. xi.) But, as I had occasion to observe in *Woods* v. *Election Commissioners,* 58 Cal. 561, the officers elected at the election of 1879 are not within the intent and meaning of these constitutional provisions, because they were elected by authority of the Constitution itself, under laws which commanded them to hold their respective offices until their successors were elected

and qualified under legislation, which was necessary to carry into effect the provisions of the Constitution upon the subject. Therefore I concur in the judgment.

(MORRISON, C. J., did not express any opinion in the case.)

McKINSTRY, J., dissenting:

I dissent. I am able to discover no constitutional objection to Section 879 of the Political Code, which reads: "Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified." The section does not operate to extend the term of any officer "beyond the period for which he is elected or appointed." (Constitution of California, Art. xi., § 9.) It is prospective in its operation, and applies only to officers elected or appointed after it was enacted. As to such an officer, his term is not extended, but the section referred to forms part of the law which establishes his term. He is elected or appointed in view of the possible event that his successor may not qualify within the definite period which constitutes his term in case his successor shall qualify within such period. Section 879 should be read in connection with the other provisions of the Code relating to terms of office, and, so read, each officer is elected or appointed for a definite period, and such additional time, if any, as may elapse between the expiration of the definite period and the qualification of his successor. Nor can resort properly be had to the words "although his term has expired," to modify or control the evident intent of the Legislature, as expressed in Section 879. The other provisions of the Code which relate to the term of any officer are to be read with the condition that the term fixed by such provisions shall be continued until the successor shall qualify.

If the Act of March 7, 1881 (Stats. 1881, p. 72), is to be construed to repeal or abrogate Section 4109 of the Political Code, as the same stood prior to that date, then either the county officers who shall be elected in Yolo County under the Act of March 7, 1881, or those who may be "appointed" *ad interim* by the Governor or other appointing power, will be the successors of the present county officers.

If those who shall be elected under the Act of March 7,

1881, will be the successors of the present officers, the Act necessarily extends the terms of the present officers. The present officers were elected to hold office until the first Monday in March, 1882, or until those elected in 1881 should qualify. If the Act of March 7, 1881, has repealed the section of the Code under which they were elected, the present officers—as a direct consequence of that Act—will continue in office until the first Monday after the first day of January, 1883, or until those elected in 1882 shall qualify. The act therefore extends the terms of the present officers beyond the period for which they were elected, and, so construed, is violative of Section 9, Article xi. of the Constitution.

The section of the Constitution applies as well to the terms of officers elected before as to those elected after the Constitution went into operation. It is a limitation upon the power of the Legislature chosen under the present Constitution, and there is nothing in the language employed which can be supposed to authorize an extension of the terms of those in office when the limitation took effect.

It has been suggested that the effect of the Act of March 7, 1881, will be to create a vacancy as to each county officer from the first Monday in March, 1882—to be filled by the appointing power. But it is clear that the Act can not be held to make such vacancy as can be filled by the Supervisors, or by any officer other than the Governor. Section 996 of the Political Code defines the vacancies which may thus be filled, and declares that such vacancies shall occur only by reason of certain acts or omissions of the "incumbent," before the expiration of his term.

It is said, however, that the Governor has power to fill the vacancies until the next election by the people. (Const., Art. v., § 8.) Thus, to construe the Constitution and the Act of March 7, 1881, is to declare that the power has been transferred to the Governor to appoint all county officers (whose terms are supposed to be affected by the legislation we are considering) to hold from the first Monday of March, 1882, until the first Monday of January, 1883. There is nothing in the language of the Act of March 7, 1881, to indicate that such concentration of patronage was within the contemplation of the Legislature, and if anything is clear from the Constitu-

tion as a whole, and from many of its provisions separately considered, it is a design that matters of local interest shall be regulated and conducted by officers selected by the people of the several counties, towns, and cities, or by those appointed by such as are so selected. It would seem to be the evident intent of the present as well as former Constitution to limit the executive patronage. (*People* v. *Mizner*, 7 Cal. 519.)

But in case the Act of March 7, 1881, should be construed as entirely abrogating Section 4109 of the Political Code, the question would remain, Will vacancies occur such as the Governor is authorized to fill? Sections 2, 15, and 16 of Article v. of the present Constitution—except in certain particulars not affecting any question involved in the present controversy—are like Sections 2, 16, and 17 of the same article of the former Constitution. In *People* v. *Whitman*, 10 Cal. 45, it was said: "The Constitution itself clearly defines the sense of the phrase 'vacancy in the office of Governor' as used in the sixteenth section, by specifically enumerating in the succeeding section the instances which devolve the duties of the Executive upon the Lieutenant-Governor. It will be seen that all the instances mentioned are such as can only occur after the term of the Governor has commenced to run. * * * When the Constitution clearly enumerates the events that shall constitute a vacancy in a particular office, we must suppose all other causes of vacancy excluded." With reference to the second section of the fifth article, the Court in the same case said: "By this section it is provided that 'the Governor shall be elected, etc., and shall hold his office two years from the time of his installation, and until his successor shall be qualified.' This language is exceedingly plain. The term of the office is fixed at two years certain, with a contingent extension. When this contingency happens, this extension is as much a part of the entire term as any portion of the two years." "If the Governor-elect fail to qualify, from any cause, the Governor would hold over until his successor be elected and qualified." The Court proceeded to apply the definition of the word "vacancy" in the phrase "vacancy in the office of Governor" to the office of Controller, and held that it was only where a vacancy thus defined occurred that the Governor had power to

appoint a Controller—adding: "If the Controller-elect fail to qualify from any cause, the Controller holds over until his successor is elected and qualified. It is only where there is no incumbent of the particular office *to hold over* that the system will allow the appointment of the Executive to fill the office."

If Section 879 of the Political Code is valid, and constitutes a portion of the law fixing the terms of county officers, the principles applied to the construction of the clauses of the former Constitution are applicable to the present Constitution and the statutes which relate to terms of county officers. These officers, like the Governor, hold office until their successors qualify. They continue to be the *incumbents* until successors are elected and qualify. If there is a failure to elect a successor, no vacancy occurs to be filled by the Governor. There is nothing in the nature of things—in the absence of express provision to that effect—which requires that the incumbents should be supplanted by those in whose selection the people have no voice. Indeed, the whole argument that the Governor may fill the county offices in case there should be no election this year, seems based upon the proposition that Section 879 of the Political Code, which authorizes every officer to continue to discharge the duties of his office until his successor is qualified, is repugnant to the provision of the Constitution which prohibits the Legislature from extending the term of any officer beyond the period for which he was elected. (Art. xi., § 9.) We have endeavored to show that Section 879 is not obnoxious to that objection. The purpose of the prohibition of the Constitution is sufficiently obvious. It is to relieve members of the Legislature from the solicitations of partisan office-holders, and to remove any temptation for those in office to employ their influence to secure a continuation of official life without any appeal to the popular voice. The terms of county officers may be fixed in advance, but no man in office can have his term extended by an act of the Legislature.

The Act of March 7, 1881, provides that the successors of the present county officers shall take office (if they shall then have qualified) in January, 1883, instead of March, 1882; Section 879 of the Political Code (which has not been re-

pealed) provides that the present officers shall continue in office until their successors shall qualify. If Section 4109 of the Political Code is dead for every purpose, the terms of the present county officers have been extended by the Act of March 7, 1881. We can not, under the Constitution, give such an effect to that Act.

Nor is it necessary, in order to prevent the Act referred to from operating an unconstitutional extension of terms of office, that we should hold the Act to be absolutely void. There is no necessary conflict between the several provisions of the Constitution mentioned by counsel. There can be no doubt that the Legislature *might* have legislated in such manner as that their work would have accorded with *all* the provisions of the Constitution.

It seems to have been assumed by counsel that the Legislature could not comply with the mandate of the Constitution "to provide for the election or appointment" of officers in the several counties, "prescribe their duties and fix their terms," without incidentally violating the prohibitory clause that no officer's term shall be extended "beyond the period for which he is elected or appointed;" and that when the Legislature fixed terms of office to commence in January, 1883, if the effect was to extend the terms of the present officers, it was an effect necessarily resulting from obedience to the constitutional mandate. But certainly a clause might have been inserted in the Act of March 7, 1881, in substance— "This Act shall not be construed to extend the term of any officer." The Constitution inserts this clause—it may plainly be read by all expounders of the law. It is not necessary to assume, however, that it was the legislative intention to extend the term of any officer. The Act of March 7, 1881, simply provides that certain officers shall be elected at a certain election, their terms to commence at a certain date thereafter. Full force and effect can be given to the Act without holding it to mean that there shall be no election of such officers in the mean time. There is nothing in the Constitution which prohibits the shortening of the term of the present county officers, or of those who shall be elected this year, by an Act of the Legislature. The Act may fairly be construed as providing for a future system of biennial elections and terms of

office commencing in 1882, and not until then superseding
the present system. So construed, it violates no provision of
the Constitution. Even admitting that the Act of March 7,
1881, was intended to repeal Section 4109 of the Political
Code, the repeal by implication can have no greater effect
than would a distinct repealing clause. If the Act had, in
terms, repealed the section of the Code, the Constitution
would have intervened and prevented the repeal from becom-
ing absolute. But the Act is prospective, and is to be read
as if it had declared "*hereafter* the several county officers
shall be elected at the general election in 1882," etc. There
is no attempt to interfere with the present system until that
election arrives. (*P. & A. Tel. Co.* v. *Commonwealth*, 66 Pa.
St. 72.)

It has been further urged, that there can be no election of
county officers this fall, because there is no law providing for
a general election this fall. It is said that the Act of April
16, 1880 (Amdts. 1880, p. 77), amends Section 1041 of the
Political Code, by providing that the general elections shall
be held on the even instead of the odd numbered years. But
that Act does not directly refer to the terms of any class of
officers, or in any way determine what officers shall be elected
at the general election. It is not pretended that its effect was
to shorten the terms of county officers, but, on the contrary,
that, in connection with the Act of March 7, 1881, it has ex-
tended them until such officers shall be succeeded by those
elected in 1882. As has been said with reference to the Act
of March 7, 1881, it is not necessary to declare the Act of
April 16, 1880, absolutely void in order to construe it so that
it shall not violate the Constitution by extending the term of
any officer.

The Act of April 16, 1880, provided that there should be a
general election in 1880 and every second year thereafter;
but there was no law for the election of *county officers* on an
even-numbered year until March 7, 1881. Neither of these
statutes can be construed to extend the term of such officers.
There was no law providing for the election of the county
officers in 1880 or 1882, which *was operative* in the year
1880. So far as such officers are concerned, the election must
be held in 1881, because to construe the Act of April 16, 1880,

as changing the time of their election from 1881 to 1882 would be to extend the terms of such officers. Nevertheless, a general election must be held in 1882, and at that election county officers should be elected as successors of those elected in 1881. This construction of the statutes of 1880 and 1881 will accomplish the purpose of the provision of the Constitution which requires the Legislature to provide for the election of county officers and to fix their terms, without violating the other provision, which prohibits the extension of the term of any officer beyond the period for which he was elected.

Ross, J.:

I dissent. For the reasons stated in my concurring opinion in the case of *Wood* v. *Election Commissioners*, 58 Cal. 561, the Act of the Legislature approved March 7, 1881, and generally known as the Hartson Act, is, I think, a valid constitutional law, prospective in its operation, and provides for a future system of biennial elections on the even-numbered years, commencing in the year 1882.

In my view, therefore, the determination of the present case depends on the question, whether, independent of the Hartson Act, there is any existing law requiring an election for county officers to be held in the month of September of this year. If there is, the Hartson Act can not operate to postpone such election, because that would be in effect to extend the terms of office of the present incumbents beyond the period for which they were elected. Those incumbents were elected at the general election held in September, 1879, by virtue of Sections 1041 and 4109 of the Political Code, which were then in force, and then read as follows:

Section 1041: "There must be held throughout the State, on the first Wednesday of September, in the year eighteen hundred and seventy-three and in every second year thereafter, and also on the Tuesday next after the first Monday of November in each bissextile or leap year, an election to be known as the general election."

Section 4109: "All county and township officers, except judicial officers, assessors, and supervisors, must be elected at the general election held in September, eighteen hundred and seventy-three, and every two years thereafter, and hold

office for two years from the first Monday of March next after their election."

Read in connection with Section 1041, as it must be, Section 4109 provided for the election of the officers therein mentioned at the general election held on the first Wednesday of September, in the year 1873, and every two years thereafter. Both sections were continued in force by the provisions of the new Constitution, until such time as the Legislature should alter or amend them, or pass such other laws as should be inconsistent therewith—all, however, subject to that other provision of the Constitution which declares that the term of no county, city, town, or municipal officer shall be extended beyond the period for which he is elected or appointed.

In 1880, the Legislature, with a view to require all elections to be held on the even-numbered years, amended Section 1041 of the Political Code so as to make it read as follows: " There must be held throughout the State, on the first Wednesday after the first Monday of November, in the year 1880, and in every second year thereafter, an election to be known as the general election;" and at the same session, but in an independent act, attempted to amend Section 4109 so as to require the county officers to be elected at such general election to be held in the even-numbered years, commencing with the year 1880. This latter act, however, was declared invalid by this Court in *Leonard* v. *January,* 56 Cal. 1. Section 4109 of the Political Code therefore remained unchanged. By its provisions the county officers are required to be elected at the general election to be held on the first Wednesday in September, 1881. In view of the constitutional inhibition against the extension of the term of any county, city, town, or municipal officer beyond the period for which he is elected, neither the Hartson Act nor the amendment of 1880 to Section 1041 of the Political Code, in my opinion, can or should be so construed as to prevent the election contemplated by Section 4109 of the Political Code, but rather that they should be construed prospectively, thus conforming to all the provisions of the Constitution on the subject, and establishing a system of biennial elections in the even-numbered years, commencing with the year 1882. The terms of the officers who should thus be elected in 1881 would be *shortened,*

but there is no constitutional objection to any act of the Legislature shortening the term of any officer. As the result of the judgment of the majority, the officers elected in 1879 will, in my opinion, continue to hold office until their successors are elected and qualified.