[Civ. No. 18847.   Second Dist., Div. Three.   Apr. 29, 1952.]

CHARLES Z. MEYERS et al., Appellants, v. BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES, Respondent.

John W. Preston and John W. Preston, Jr., for Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Respondent.

VALLÉE, J.—Appeal by petitioners from an order denying a peremptory writ to review the action of the Board of Supervisors of the County of Los Angeles in confirming on appeal a decision of the regional planning commission of the county granting a special permit to the county of Los Angeles to operate a refuse dump.

Petitioners, each of whom is the owner of improved real property in City Terrace, an unincorporated area in the county of Los Angeles, occupied by him and his family as a home, brought this proceeding on behalf of themselves and all other persons similarly situated.

On December 28, 1950, the county of Los Angeles, by its board of supervisors, filed an application with the regional planning commission of the county for a special permit to establish, operate and maintain a refuse disposal dump in unimproved land owned by it and contiguous to City Terrace. The application states it was filed "As required by Chapter Six of the Zoning Ordinance (Ordinance No. 1494)." The county's land was then zoned M-3,[1] and could not be used for a dump without a special permit.

On December 29, 1950, post cards giving notice of a hearing to be held on January 11, 1951, before the zoning board of the commission, were mailed to all persons whose names and addresses at that time appeared on the latest available county assessment roll as being owners of property within a radius of 500 feet of the property involved. On December 31, 1950, a notice of the time and place of the hearing was published in a newspaper of general circulation.

On and prior to January 11, 1951, petitioners and other property owners filed written protests with the planning commission, protesting the granting of the permit on the ground that the "dump would be unsanitary, noisy, a menace to the health of the adjacent land owners and their families and a nuisance, and that such maintenance would greatly decrease property values in the vicinity of said dumps and operations."

On January 11, 1951, a public hearing was held by the zoning board of the planning commission; and on January 17, 1951, it made its findings and recommended to the planning commission that the permit be granted.

On the same day, January 17, 1951, the planning commission, after having received a summary of the testimony pre-

---

[1]An unclassified zone. (Ord. 1494 (as amended, 1951 ed.), § 101.)

sented at the hearing and the findings and the recommendation of the zoning board, approved the recommendation, determined that the permit, as recommended, would be consistent with the intent and purposes of the zoning ordinance, and, by letter, notified the county that its application had been approved and that the permit would become effective, subject to certain conditions.

On January 30, 1951, petitioners filed a notice of appeal with the board of supervisors, requesting that a "plenary hearing" be granted to them and that they be permitted to introduced "additional" evidence. Their appeal was based on the same grounds as those advanced at the hearing before the zoning board of the commission.

On April 18, 1951, the board of supervisors, following a reading of the transcript of the hearing before the zoning board, without notice to petitioners and without according them a hearing, confirmed the decision of the planning commission.

The petition for review alleges that the board of supervisors acted arbitrarily and without jurisdiction in affirming the planning commission's decision; that the action of the board, in denying petitioners' appeal without giving them an opportunity to be heard or to submit evidence, resulted in depriving them of a substantial right "to wit, the right to be heard by the Board of Supervisors and to show that the operation of a cut and fill dump in close proximity to their several homes will deprive them of the several values thereof, in whole or in part, without due process of law"; and that petitioners have no right of appeal from the action of the board of supervisors, nor any plain, speedy or adequate remedy at law or in equity.

The petition prayed that a writ of review be granted directing the board of supervisors to certify a transcript of the record and proceedings to the court, and that the order confirming the issuance of said permit be set aside and annulled as being made without jurisdiction.

The question is whether the board of supervisors acted in excess of its jurisdiction. ■ A writ of review tries only the jurisdiction of an inferior board or tribunal exercising judicial functions. (Code Civ. Proc., § 1074; *Borchard* v. *Board of Supervisors*, 144 Cal. 10, 14 [77 P. 708]; *Garvin* v. *Chambers*, 195 Cal. 212, 220 [232 P. 696]; *Cole* v. *Board of Supervisors*, 27 Cal.App. 528, 531 [150 P. 784].)

Ordinance 1494 as amended, under which the proceeding for the special permit was brought, is the "Basic Zoning

Ordinance'' of the county of Los Angeles. It contains, among other things, the procedure for obtaining the special permit sought here. (Ch. 6, arts. 1, 2, and 3, §§ 601-665.) After the filing of an application, a time and place for a public hearing is fixed. (§ 637.) A notice of the time and place of such hearing must be published once in a newspaper of general circulation in the county, and post card notices must be mailed to all persons whose names and addresses appear on the latest available assessment roll of the county as owning property within a distance of 500 feet from the exterior boundaries of the area actually to be occupied by the use for the maintenance of which the application is filed. (§ 638.) The hearing may be conducted either by the zoning board of the planning commission or by the planning commission itself, if it so determines. (§ 631.) When the hearing is conducted by the zoning board, as here, it reports its findings to the planning commission and recommends the action which it concludes the planning commission should take. (§ 639.) Upon receiving the zoning board's report, the planning commission may: ''(a) Approve and adopt the findings and recommendations of the Zoning Board. (b) Require a transcript or summary of the evidence introduced before the Zoning Board. Upon receipt of such transcript or summary the Commission shall take such action as in its opinion is indicated by such evidence. (c) Refer the matter back with or without instructions to the Zoning Board for further proceedings. (d) Set the matter for hearing before itself. At such hearing the Commission shall hear and decide the matter de novo as if there were no Zoning Board.'' (§ 640.)

Within 15 days after the receipt by the applicant of notice of the action of the planning commission, any person dissatisfied with its action may appeal to the board of supervisors. (§ 659.) Upon receiving a notice of appeal the board of supervisors may: ''(a) Affirm the action of the Commission, or (b) Require a transcript or recording of the testimony and all other evidence upon which the Commission made its decision. Upon receiving such evidence the Board of Supervisors shall take such action as, in its opinion, is indicated by such evidence; or (c) Refer the matter back with or without instructions to the Commission for further proceedings, or (d) Set the matter for hearing before itself. At such hearing the Board of Supervisors shall hear and decide the matter de novo as if no other hearing had been held.'' (§ 662.) The

decision of the board of supervisors on appeal is final and conclusive as to all things involved in the matter. (§ 665.)

It is apparent from the record that all steps necessary to vest jurisdiction in the planning commission to grant or deny a special permit under Ordinance 1494 as amended, were followed, and no contention is made that the findings of the zoning board are unsupported by the evidence given at the public hearing, at which time petitioners' protests were duly considered. ▮▮▮ Petitioners charge that the refusal of the board of supervisors to grant them a hearing *on appeal* was an act in excess of its jurisdiction. The ordinance gives the board, on appeal, the power to proceed as it did here, to require a transcript of the testimony and all other evidence upon which the planning commission made its decision and, upon receipt thereof, take such action as, in its opinion, may be indicated by the evidence. It may affirm the action of the planning commission without any further hearing, or it may, in its discretion, order a hearing de novo. Whichever action is taken, the board of supervisors acts in the exercise of its jurisdiction and not in excess of it.

There is no merit in petitioners' claim that Ordinance 3371, upon which they rely to sustain their contention that the board of supervisors acted in excess of its jurisdiction, is controlling because it was never specifically repealed or superseded or in anywise affected by the basic zoning ordinance.

Ordinance 1494, which, as amended, is now the basic zoning ordinance, was first adopted September 12, 1927. It was then entitled "An ordinance providing for the creation in the unincorporated area of the County of Los Angeles of twelve (12) zones and prescribing the classes of uses of buildings, structures, improvements and premises in said several zones." On May 31, 1939, Ordinance 3371, upon which petitioners rely, was adopted. It was entitled "An ordinance amending section 2 of and adding sections 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8 and 2.9 to Ordinance No. 1494 (New Series), relating to rubbish dumps."[2] It should be noted that the scope of this

---

[2]§§ 2.4 to 2.8 relate to the procedure for obtaining a permit, the mailing and publishing of notices of hearing before the commission, the filing of reports by the health officer and county fire warden showing the effect of the proposed dump on the public health, and whether or not the dump may be a fire hazard.

§ 2.9 reads: "After a public hearing upon an application to maintain a rubbish dump the Regional Planning Commission shall report to the Board of Supervisors its findings as to whether or not the proposed rubbish dump will or will not: (a) Be in the proper zone. (b) Comply with this and all other ordinances pertaining to rubbish dumps. (c) Con-

ordinance was a limited one. It merely amended one of the sections of Ordinance 1494, and added several subdivisions thereto pertaining to rubbish dumps. ■ The effect of this amendment was to make it operate precisely as though the subject matter had been originally incorporated in Ordinance 1494. (*Treadwell* v. *Yolo County,* 62 Cal. 563, 564.) On December 13, 1949, Ordinance 5447 was adopted, effective January 13, 1950. It was entitled "An ordinance amending Ordinance No. 1494 thereby amending official plans of the Master Plan of Land use." It in part provided: "The Board of Supervisors of the County of Los Angeles do ordain as follows: Section 1. Ordinance No. 1494 entitled 'An Ordinance providing for the creation in the unincorporated area of the County of Los Angeles of zones and prescribing area requirements and the classes of uses of buildings, structures, improvements and premises in said several zones,' adopted September 12, 1927, is amended to read: An ordinance providing for the creation in the unincorporated area of the County of Los Angeles of zones and prescribing area requirements and classes of uses of buildings, structures, improvements and premises in said several zones."[3]

It clearly appears, not only from the foregoing but from the introductory sections of Ordinance 5447, that it was the legislative intent to revise the entire subject matter of Ordinance 1494. ■ Where it clearly appears that the intention of the legislative body is to revise in the later act the entire subject matter of the former one, the later act operates as a repeal of the former although it contains no express words to that effect. (*Treadwell* v. *Yolo County,* 62 Cal. 563, 564; *Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596, 614-615 [195 P.2d 501].)

Petitioners can derive no comfort from section 106 of Ordinance 1494 as amended, which provides that Ordinance 1494 shall not be construed to amend or repeal any part of any other ordinance not specifically amended or repealed "except in such particulars or matters as this ordinance is more restrictive than such other ordinances or part thereof; and that

---

stitute a health menace. (d) Constitute a fire menace. The Commission shall also recommend the granting and denial of the permit. The recommendation shall be accompanied by a transcript of the testimony received at the public hearing. The Board shall thereupon grant or deny the permit."

[3]Ordinance 1494 as amended, reads the same in the 1951 edition of the basic zoning ordinance.

in all particulars wherein this ordinance is not more restrictive each such other ordinance shall continue and shall be in full force and effect." ■ It is the general rule that an amendment of an act operates as a repeal of its provisions to the extent that they are materially changed by, and rendered repugnant to, the amendatory act, since it is the latest expression of the legislative body upon the subject. (*California Emp. Com.* v. *Arrow Mill Co.,* 45 Cal.App.2d 668, 672 [114 P.2d 727]; *People* v. *Weitzel,* 201 Cal. 116, 118 [225 P. 792, 52 A.L.R. 811]; 23 Cal.Jur. 693, § 83; 50 Am.Jur. 556, § 552.) We think it apparent that the provisions of Ordinance 1494, as amended by Ordinance 3371 with respect to the granting or denying of special permits for the maintenance of rubbish dumps and the procedure therefor, were materially changed by Ordinance 5447. This latter ordinance completely revised Ordinance 1494, as amended by Ordinance 3371 and by other ordinances. Perhaps the most radical changes are that a special use permit for refuse disposal is now automatically granted in an M-3 zone "except when operated by, or under control of the County" (§ 501(a) (36)), and with respect to the powers of the planning commission and the board of supervisors, as heretofore shown. Under Ordinance 3371, the only function of the planning commission with respect to the granting or denying of a special use permit pertaining to refuse dumps was to hold a public hearing thereon and report its findings and recommendation to the board of supervisors, and only the board could grant or deny the permit. Under Ordinance 1494, as amended by Ordinance 5447, the planning commission is authorized to grant or deny a permit and the board acts merely as a reviewing body.

■ A zoning ordinance authorizing a planning commission to grant or deny a special use permit and providing for an appeal to the legislative body which created the commission, is valid. (Stats. 1937, ch. 665, § 14, p. 1824, Stats. 1947, ch. 807, § 71, p. 1919, now Gov. Code, § 65330; 2 Deering's Gen. Laws, Act 5211b, § 6.3; *Wheeler* v. *Gregg,* 90 Cal.App. 2d 348, 361-3 [203 P.2d 37]; *Mitchell* v. *Morris,* 94 Cal.App. 2d 446, 448-51 [210 P.2d 857]; see *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 71-78 [187 P.2d 686]; *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471, 475 [197 P.2d 218].)

■ The power of the board of supervisors, as a reviewing body, to grant a hearing de novo is discretionary and not mandatory. It did not, therefore, exceed its jurisdiction in

denying petitioners a hearing de novo. Petitioners had their day before the planning commission.

Petitioners contend that the superior court should have reviewed the action of the board of supervisors under section 1094.5 of the Code of Civil Procedure.[4] Assuming petitioners' contention to be correct, there was no showing that the board of supervisors proceeded without or in excess of its jurisdiction, or that there was not a fair trial, or that there was any prejudicial abuse of discretion.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.