Clifford E. WARREN, Appellant,

Frank Harris, Intervenor,

v.

Lowell THOMAS, Jr., Lieutenant Governor and the State of Alaska, Appellees.

No. 2919.

Supreme Court of Alaska.

Sept. 2, 1977.

Clifford E. Warren, pro se.

Rodger W. Pegues, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellees.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR and BURKE, Justices.

## OPINION

CONNOR, Justice.

This appeal concerns the 1975 amendments by the legislature to AS 39.50, Alaska's conflict of interest law which was enacted by initiative.

On August 27, 1974, an initiative entitled "An Act relating to conflict of interest of public officials" was passed by the people of Alaska. Under article XI, § 6 of the Alaska Constitution the initiative became effective ninety days after the election results were certified, that is, on December 11, 1974. On February 8, 1975, the legislature amended the law to provide that the disclosure statements of certain public officials were to be filed on April 1, 1975, rather than February 9, 1975. The amendment also provided that officials who left office on or after December 11, 1974, and before April 1, 1975, were

not required to file a statement. *See* Ch. 2, SLA 1975 (effective February 8, 1975). The law was amended and revised again in the spring of 1975, effective April 1. *See* Sec. 28, ch. 25, SLA 1975. It is entitled "An Act relating to conflict of interest; and providing for an effective date." The amendment changed the date for filing the financial statements from April 1, 1975, to April 15, 1975. *See* AS 39.50.150.

Clifford E. Warren originally filed this action to challenge certain regulations passed in connection with, and revisions made to, the conflict of interest law. He subsequently filed an amended complaint seeking to prevent the 1975 amendments to the law from becoming effective. Warren then filed a motion for summary judgment seeking to have the amendments declared void. A hearing was held on April 21, 1976, and summary judgment was granted in favor of the state.[1] This appeal follows:

Warren raises two important issues concerning the constitutionality of the legislature's action:

1. Whether the legislature has the power to amend a law enacted by the initiative procedure;

2. Whether the amendments to the initiative constitute a repeal of the initiated law in violation of article XI, § 6 of the Alaska Constitution.

1. Mr. Frank Harris, a proponent of another initiative, intervened to challenge the legislature's power to amend an initiated statute, but has not filed an appearance on appeal.

2. Warren argues that by changing the date of compliance from 60 days after the effective date of the law (February 6, 1975) to April 1, 1975, the legislature changed the effective date of the law itself. This argument lacks merit since the extension of time in which public officials must file their disclosure statements has nothing to do with the date that the initiative itself became law. That occurred on December 11, 1974, and was not affected by the February amendment. *See* Alaska Const. art. XI, § 6.

Warren also argues that a considerable number of legislators have not complied with the disclosure requirements. He was under the impression that the disclosure statements were due on the day the initiative became law and,

Several additional arguments are raised but do not warrant extensive discussion.[2]

Article XI, § 1, of the Alaska Constitution provides that the people of Alaska may "propose and enact laws by the initiative. . . ." Article XI, § 6 provides:

"If a majority of the votes cast on the proposition favor its adoption, the initiated measure is enacted. If a majority of the votes cast on the proposition favor the rejection of an act referred, it is rejected. The lieutenant governor shall certify the election returns. An initiated law becomes effective ninety days after certification, is not subject to veto, and may not be repealed by the legislature within two years of its effective date. It may be amended at any time. An act rejected by referendum is void thirty days after certification. Additional procedures for the initiative and referendum may be prescribed by law."

According to this plain language the legislature may not repeal a law passed by initiative for two years, but may pass an amendment at any time. We interpret this provision in accordance with the general principle of statutory construction that a constitutional provision should receive a reasonable and practical interpretation in accordance with common sense.[3] *Cottingham v. State Board of Examiners*, 134 Mont. 1, 328 P.2d 907, 915 (1968); 2A Sutherland, Statutory Construction, § 49.03 (4th

therefore, when the new legislators took office on January 20, 1975, they were in noncompliance with AS 39.50. However, the disclosure statements were not due until February 9 (April 15 as amended).

3. Warren correctly points out that the statements of delegates at the constitutional convention concerning the provisions for the initiative and referendum process have limited usefulness as interpretative aids.

In *Warren v. Boucher*, 543 P.2d 731, 735 (Alaska 1975), we recognized that the many views expressed by individual delegates coupled with the numerous revisions of the initiative and referendum articles militate against using convention minutes as interpretative guides. Moreover, there was less than a general consensus concerning the virtues of direct legislation. *See* V. Fischer, *Alaska's Constitutional Convention* 79–81 (1975).

ed. Sands 1973).[4] Moreover, it has been held that in the absence of a specific restriction the legislature may amend or repeal a law passed by initiative.[5]

■ In *Warren v. Boucher,* 543 P.2d 731, 737 (Alaska 1975), we recognized that the legislature is vested with broad authority to amend laws enacted by the people through the initiative process. *Warren,* however, argues that *Warren, supra,* reaffirms the intent of the framers of the Alaska Constitution that the legislature may interfere with the initiative process by amending an initiated law only where it creates a potential danger to the operation of governmental functions.[6] The issue presented in that case is different than that presented here. There we were concerned with whether the legislature had short-circuited the initiative

process by passing a law that was substantially the same as the proposed initiative. But, as we recognized, the legislature has broad powers to amend an initiative.[7]

■ The central issue in the case at bar is whether the legislature has exceeded that broad power by passing an amendment which so vitiates the initiative as to "constitute its repeal." *Id.* at 737. Warren argues that the changes are so drastic that they make a mockery of the law, that the trial court erred in concluding the legislation was merely "housekeeping," and that the amendments to AS 39.50 amount to a repeal of the law. We disagree. "[A]n amendment of an act operates as a repeal of its provisions to the extent that they are materially changed by, and rendered repugnant to, the amendatory act." *Meyers v. Board*

---

**4.** *Accord, Calif. Employment Comm'n v. Municipal Court,* 62 Cal.App.2d 781, 145 P.2d 361, 363 (1944); *Opinion of the Justices,* 308 Mass. 619, 33 N.E.2d 275, 279 (1941); *State v. Babcock,* 175 Minn. 103, 220 N.W. 408, 410 (1928); *see Application of Pioneer Mill Company,* 53 Haw. 496, 497 P.2d 549, 552–53 (1972).

**5.** *Cottingham v. State Board of Examiners,* 134 Mont. 1, 328 P.2d 907, 913 (1968); *Zilesch v. Polk County,* 107 Or. 659, 215 P. 578, 582 (1923); *cf., e. g., Staples v. Bishop,* 225 Ark. 936, 286 S.W.2d 505 (1956). *See also Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952). *See generally* 6 McQuillin, The Law of Municipal Corporations § 21.03 (3d ed. 1969); Annot., 33 A.L.R.2d 1118, 1121 (1954), and cases collected therein.

In *Cottingham, supra,* the Montana Supreme Court recognized that the legislature's plenary power to amend or repeal legislation passed by initiative must not contravene "an express limitation or prohibition of the Constitution of either Montana or the United States." *Id.* 328 P.2d at 913. In Alaska such a limitation is contained in art. XI, § 6, with respect to the power to repeal.

**6.** There was considerable concern over whether the Alaska Constitution should contain any provisions for initiative and referendum. *See* V. Fischer, *supra.* In order to protect the machinery of government, certain limitations were placed upon the use of the initiative and referendum, *see* art. XI, § 7, though otherwise the citizens of Alaska and the legislature are co-equal. *Zilesch, supra,* at 582.

**7.** We stated:
"The final constitutional provision states in pertinent part:

'An initiated law . . . is not subject to veto, and may not be repealed by the legislature within two years of its effective date. It may be amended at any time. . . .'
The constitution thus vests broad authority in the legislature to vary the terms of an initiated law, after its adoption, by the process of amendment. This power amounts to a check or balance against the initiative process. No doubt the legislature was given this power to assure that initiatives which were ill-advised, which might seriously cripple or frustrate the sound workings of government, or which might be impracticable, could be altered or corrected rapidly by the legislature. It was obviously intended by the framers that the initiative process should not be permitted to disrupt vital government functions or to impose intolerable burdens upon established administrative systems. To this end the legislature was given the ability to substitute its judgment for that of the proponents of an initiative.
What is significant to us here is the effect which the amendatory power of the legislature has upon our interpretation of the words 'substantially the same measure.' For if the legislature has broad power of amendment, it follows that it has broad power to change an initiative by an enactment covering the same subject as the initiated measure. In short, we must interpret Art. XI, Sec. 4, broadly and not narrowly as to the scope of legislative power. We, of course, are not passing here on the question of whether an amendment so vitiates an act passed by initiative as to constitute its repeal."
543 P.2d at 737.

*of Sup'rs of Los Angeles County,* 110 Cal. App.2d 623, 243 P.2d 38, 42 (1952); *see also W. R. Grasle Company v. Alaska Workmen's Comp. Board,* 517 P.2d 999 (Alaska 1974). The implied repeal of an act is disfavored and will be limited to that which is necessary to carry out the intent of the legislature. *John Hancock Mut. Life Ins. Co. v. Haworth,* 68 Idaho 185, 191 P.2d 359, 363 (1948); 1A Sutherland, Statutory Construction, § 23.09 (4th ed. Sands 1972). *See also* 6 McQuillin, Law of Municipal Corporations § 21.09 (3d ed. 1969) (repeal of ordinances by implication disfavored). In the case at bar, one section [8] and two subsections [9] were expressly repealed in 1975 when the legislature amended the initiated law. Sec. 26, ch. 25, SLA 1975.

■ Other sections were impliedly repealed by virtue of inconsistent amendatory provisions.[10] However, this does not necessarily mean that the act as a whole was repealed. When AS 39.50 was amended certain of its provisions or portions thereof were repealed and reenacted in a modified form.[11] Where it it reasonable to do so, these provisions are considered to be a continuation of the original law which is to be construed with the amendments. *Green v. State,* 462 P.2d 994, 1000 (Alaska 1969); 1A Sutherland, *supra,* § 22.33 at 191; *accord, e. g., Security Life and Accident Company v. Heckers,* 177 Colo. 455, 495 P.2d 225, 227 (1972); *John Hancock Mut. Life Ins. Co., supra,* 191 P.2d at 362.

■ Of course there remains the question whether the amendments so emasculate the law that it is effectively repealed. We conclude that they do not. There are considerable language changes, but these clarify and render the law more precise. The fines for violations of the law have been reduced but the penalties are still significant. *See* AS 39.50.060(a) and AS 39.50.070. Finally,

the amended law still imposes substantial disclosure requirements on public officials and effectuates the intent of the electorate that those in a position of public trust be held to a high standard of financial disclosure.

Warren challenges the state's reliance on *State v. Meyers,* 51 Wash.2d 454, 319 P.2d 828 (1957), in support of its argument that the amendments to AS 39.50 do not effectively repeal this law. In *Meyers, supra,* the people of Washington passed an initiative providing for the redistricting of the state, using the census tract rather than the election precinct as the unit of population for the purpose of informing senatorial and legislative districts. This was in an effort to cure legislative noncompliance with the constitutional provision on apportionment and to better reflect the population configuration of the state. The legislature amended the initiative by reinstating the use of the election precinct. This action was challenged as violating the state constitutional prohibition against the repeal, but not the amendment, of initiated laws. On appeal the Washington Supreme Court found the amendment to be valid. Defining the words "to amend" broadly, the court said that an "amendment may effectually supplant or destroy the original charter, and institute a new policy altogether." *Id.,* 319 P.2d at 831. The dissent argued that the legislature's action emasculated the theory of the initiative and thwarted the constitutional process. *Id.,* 319 P.2d at 840. Nevertheless, the majority opinion concluded that the legislature properly exercised its discretion in determining that the precinct method was more suitable. *Id.,* 319 P.2d at 834.

As Warren argues, there is much merit in the dissent in *Meyers* as to the scope of the legislature's power to amend laws enacted by initiative, but we are not presented with

---

**8.** AS 39.50.140 (penalties for accepting bribes).

**9.** AS 39.50.040(b)(6) (duty of trustee of blind trusts to file for trustor): AS 39.50.030(c) (exemption from compliance by Alaska Supreme Court because of profession).

**10.** For example, under AS 39.50.060 the penalties for violations were changed from $500–$5,000 to $100–$1,000 and from a period of up to one year's imprisonment to a period of up to six months.

**11.** *E. g.,* AS 39.50.020(b).

a similar case. The amendments to AS 39.50, which preserve its basic structure and purpose, fall far short of the drastic changes made to the apportionment scheme by the Washington legislature.

For the purposes of this appeal it is unnecessary for us to decide at what point an amendment might be so drastic as to constitute a repeal of an initiated law in violation of the Alaska Constitution. In this case the amendments only reduced the penalties for violation of the law and clarified some of the language. We are of the opinion that such an amendment did not constitute a repeal of the initiated law.

AFFIRMED.